EDWARD MURPHY, 2d, *v.* JOHN HOFMAN COMPANY.

IN ERROR TO THE COURT OF APPEALS OF THE STATE OF NEW YORK.

No. 33. Argued December 1, 2, 1908.—Decided January 4, 1909.

Where the bankruptcy court has the actual possession of property, the title to which is in dispute, that property is withdrawn from the jurisdiction of other courts, and, independently of any jurisdiction conferred by statute, the bankruptcy court, as is the case with other Federal and state courts, has ancillary jurisdiction to hear and determine all questions respecting such title; and such jurisdiction cannot be disturbed by the process of any other court. *Wabash Railroad* v. *Adelbert College,* 208 U. S. 38.

Where one who has no other connection with the property is appointed receiver his possession is that of the court and not that of an individual.

The seizure of goods in the possession of a receiver in bankruptcy, under a writ of replevin issued by a state court against the receiver, individually, *held* in this case to be an unlawful invasion of the possession of the bankruptcy court.

THE facts are stated in the opinion.

*Mr. Herbert D. Bailey* for plaintiff in error:

The bankrupt's actual possession of this property at the inception of the bankruptcy proceedings, and its delivery thereof to the receiver, as a part of its property, rendered it the duty of the receiver not only to take but to hold the property pending an order of the Federal court as to its disposition. *In re Schermerhorn,* 16 Am. B. R. 507; *White* v. *Schloerb,* 178 U. S. 542; *S. C.,* 4 Am. B. R. 178; *Sharpe* v. *Doyle,* 102 U. S.

686, reversing *Doyle* v. *Sharpe*, 74 N. Y. 156; *In re Rochford*, 10 Am. B. R. 608; *Whitney* v. *Wenman*, 198 U. S. 539; *S. C.*, 14 Am. B. R. 45; *In re Leeds*, 12 Am. B. R. 136; Gluck & Becker on Receivers, 389, 390; Alderson on Receivers, 329; *Stanley* v. *Schwalby*, 147 U. S. 508; *United States* v. *Lee*, 106 U. S. 196.

The Federal court having found the property in the possession of the bankrupt, who claimed it, had exclusive jurisdiction, and having by its orders disposed specifically of the property prior to October 11, 1904, on notice to the Hofman Company, its disposition was effectual and conclusive. The state court was without jurisdiction to review, modify or disturb the disposition made by the Federal court. Bankruptcy Act, § 2, (3), (5), (6), (7), (15); Bankruptcy Act, § 1, (7), (8), (9); Federal Constitution, Art. I, § 8; Federal Constitution, Art. III, § 2; *White* v. *Schloerb*, 178 U. S. 542; *Whitney* v. *Wenman*, 198 U. S. 539; *Central Nat. Bank of Boston* v. *Stevens*, 169 U. S. 432; *Peck* v. *Jenness*, 7 How. 612; *Riggs* v. *Johnson*, 6 Wall. 166; *Crescent City Live Stock Co.* v. *Butchers' Union*, 120 U. S. 141; *Freeman* v. *Howe*, 24 How. 450; *Buck* v. *Colbath*, 3 Wall. 334; *Railroad Co.* v. *Gomila*, 132 U. S. 478; *Dowell* v. *Applegate*, 152 U. S. 327; *Covell* v. *Heyman*, 111 U. S. 176; *In re Watts*, 190 U. S. 1; *Wiswall* v. *Sampson*, 14 How. 52; *Sharpe* v. *Doyle*, 102 U. S. 686; *City Bank of New Orleans, In re Christy*, 3 How. 292; *Colby* v. *Reed*, 99 U. S. 560.

*Mr. John A. Barhite* for defendant in error:

No Federal question is involved in this case and no officer of the United States court is interested in the decision.

It was the duty of the bankruptcy court to protect its receiver, and that court would protect its receiver from any interference in the discharge of his duties, but it appeared to that court that the defendant in error was not attempting to interfere with the receiver but was engaged in a controversy with an individual in whose welfare the bankruptcy court had no interest and over whose actions it had no control, and the order vacating the injunction was a plain direction to the re-

ceiver not to attempt to retain the show cases and that if he did attempt to retain them he did so at his own peril.

The claim of the receiver that he was helpless and was the innocent victim of his office, is controverted by the principle laid down in *Dushane* v. *Beall*, 161 U. S. 513, 515. See also *In re Geo. M. Hill Co.*, 123 Fed. Rep. 866.

The state court had jurisdiction of this action and the record shows no question which can be determined by this court.

The bankruptcy act nowhere gives exclusive jurisdiction to the United States courts to determine questions between receivers and trustees in bankruptcy and adverse claimants. The right of the United States court to administer property which comes into its possession, must rest upon the principle where it applies that property once in the possession of a court will be administered by that court and not taken from its possession by some other court. *Cook* v. *Whipple*, 55 N. Y. 150; *Peck* v. *Jenness*, 43 Am. Dec. 573, 581; *State* v. *Trustees*, 65 N. C. 714, 719; *Claflin* v. *Houseman*, 93 U. S. 130; *Eyster* v. *Gaff*, 91 U. S. 521; *Bardes* v. *Hawarden Bank*, 178 U. S. 524; *White* v. *Schloerb*, 178 U. S. 542; *Sharpe* v. *Doyle*, 102 U. S. 686, discussed and said not to support contentions of plaintiff in error.

The trial court made no error, either in the reception or rejection of evidence, which requires the reversal of the judgment.

Upon the trial the plaintiff in error waived any claim which he might have to the property in dispute and the trial court had no other course than to direct a verdict for the plaintiff, the defendant in error.

MR. JUSTICE MOODY delivered the opinion of the court.

This is a writ of error to review a final judgment of the Court of Appeals of the State of New York in an action of replevin. The writ was allowed to the plaintiff in error, Murphy, but denied to the party joined with him, by the Chief Judge of that court while the record was still in its possession.

and before it had been remitted to the Supreme Court, in accordance with the practice of the State. A clear understanding of the questions before this court will be aided by a relation of the facts out of which the litigation arose. Such of them as do not bear upon the Federal questions may either be omitted or stated in a very general way.

The Dodge Dry Goods Company, a corporation, had contracted with the John Hofman Company, the defendant in error, for the construction and installation in the store of the Dodge Company of a lot of show cases. Shortly after the installation of the show cases and before the contract price was paid, proceedings in bankruptcy against the Dodge Company were begun in the District Court of the United States, and, on August 18, 1903, Edward Murphy, 2d, the plaintiff in error, was appointed by that court temporary receiver of the property of the alleged bankrupt. Thereupon the Hofman Company took the position that the show cases had never been accepted by the bankrupt, and that, although they had been used for some time in the business, title to them had not passed from the vendor. Accordingly, the Hofman Company, on August 20, 1903, demanded in writing the possession and delivery of the show cases from "Edward Murphy, 2d, Receiver, etc., of Dodge Dry Goods Company." Murphy declined to deliver up the property, saying that he was in possession as receiver. The order of the District Court appointing the receiver recites the filing of the petition and affidavit, and directs the alleged bankrupt to show cause on the sixth of October, 1903, why a permanent receiver should not be appointed, and then directs that, pending the return of the order, the "alleged bankrupt be, and it hereby is, enjoined and restrained from making any transfer of any of its property and . . . all persons are enjoined and restrained from instituting and from prosecuting any and all suits and proceedings in any court against said alleged bankrupt and against any of its property. . . . that Edward Murphy,

2d, . . . be, and he hereby is, appointed temporary receiver of all the property, real and personal, and rights of action and demands due said alleged bankrupt with power to collect and receive same and continue the business with the present employés." The order further directs that the receiver shall take immediate possession of the property of the bankrupt and carry on the business. On August 21, 1903, Murphy notified the president of the Dodge Company that he had been appointed receiver, and demanded possession of the property of the alleged bankrupt. The keys of the store were given to the receiver, and he took possession of the property in it, including the show cases, and continued the business. At that time the show cases were filled with goods, and they thenceforth were used by the receiver in the conduct of the business. Nothing at the time was said specifically about them, but shortly afterward the president of the Dodge Company informed the receiver that the title to the store was in the Century Mercantile Company, another corporation, and that by the terms of the lease to the Dodge Company the fixtures, including the show cases, became the property of the landlord on the bankruptcy of the tenant. The receiver then entered into negotiations with the counsel of the Century Mercantile Company, and it was agreed that the show cases should be omitted from the receiver's inventory, and the dispute as to the title to them between the receiver and the Century Mercantile Company should be referred to the decision of the bankrupt court. The situation then was this: The receiver was in possession of the stock of goods, engaged in conducting the business, and using the show cases in the business, claiming the right to do so because they were the property of the bankrupt. The receiver had been informed that there were two outstanding conflicting claims to the title of the show cases: first, that of the John Hofman Company, who manufactured and installed them, and claimed that the title had not passed to the bankrupt but remained in the vendor; second, that of the Century Mercantile Company, who claimed that the title had

passed to the bankrupt, and that afterwards, by virtue of the terms of the lease of the store, title had been vested in it. The receiver disputed both claims, and, as we shall see hereafter, the dispute with the Century Mercantile Company was settled by the bankruptcy court in favor of the receiver. The John Hofman Company, however, failed to resort to the bankruptcy court for the adjudication of its claim, and began an action against "Edward Murphy, 2d, and Century Mercantile Company," by the service, on the sixth day of October, 1903, of a summons "to answer the complaint in this action," together with an affidavit in replevin and a requisition to replevy the show cases and a copy of an undertaking from the plaintiff accepted by the sheriff. It will be observed that Murphy was not described in the summons as receiver. On that day the sheriff went to the store, identified the show cases, and said with respect to each one, "I replevy this show case." He was requested by both defendants not to take them away. He did not move them, or lock up the store, or put a keeper in charge, and went away leaving the show cases exactly as they were when he came in. On the ninth of October, 1903, the judge of the bankruptcy court, on the petition of the receiver, enjoined all further proceedings in the action of replevin until the further order of the court; enjoined the sheriff from executing any requisition in replevin of property in the possession of the receiver, and enjoined the sheriff and all other persons from interfering in any manner with the property then in the possession of the receiver. The John Hofman Company applied for an order vacating this injunction. The application remained pending for a year, owing to the illness of the District Judge, and on October 11, 1904, the order of injunction was vacated. Three days later, on October 14, 1904, the sheriff removed the show cases from the store. In the meantime they had been sold at a trustee's sale of the property of the bankrupt.

Thereafter the defendants severally filed answers. Murphy set up in defense that at the time of the service of summons

upon him he was in possession of the property as the receiver of the bankrupt; that he remained in possession as receiver until the adjudication of bankruptcy and the appointment of himself as a trustee, and that as trustee, under the order of the bankruptcy court, he sold the property, and the sale was duly confirmed. The issue made by the pleadings was this: The plaintiff in replevin demanded the property in dispute from Murphy as an individual. Murphy, on the other hand, asserted that he had no concern with the property except in his capacity as receiver; that is to say, as an officer of the court of bankruptcy. The burden rested upon the plaintiff to show, first, that the title had not passed from it to the Dodge Company, a question purely of state cognizance; and, second, that the possession of Murphy of the show cases was not a possession as receiver in bankruptcy, a question ultimately for Federal cognizance. There was a trial before a jury and a verdict for the plaintiff, without damages, which was successively affirmed by the Appellate Division of the Supreme Court and by the Court of Appeals. Neither court rendered an opinion.

Before going further it is well to ascertain the principles of law which are applicable to the situation. The bankrupt act of 1898, as originally enacted, did not confer jurisdiction on the District Courts of the United States over suits brought by trustees in bankruptcy to assert title to property as assets of the bankrupt, or to set aside transfers made by the bankrupt in fraud of the creditors or by way of preference, unless by consent of the defendant. *Bardes* v. *Hawarden Bank*, 178 U. S. 524; *Frank* v. *Vollkommer*, 205 U. S. 521. The act, however, preserves the jurisdiction, otherwise existing by statute, of the courts of the United States, though it is limited to courts where the bankrupt himself could have prosecuted the action. *Bush* v. *Elliott*, 202 U. S. 477. But where the property in dispute is in the actual possession of the court of bankruptcy there comes into play another principle, not peculiar to courts of bankruptcy but applicable to all courts, Federal

or state. Where a court of competent jurisdiction has taken property into its possession, through its officers, the property is thereby withdrawn from the jurisdiction of all other courts. The court having possession of the property, has an ancillary jurisdiction to hear and determine all questions respecting the title, possession or control of the property. In the courts of the United States this ancillary jurisdiction may be exercised, though it is not authorized by any statute. The jurisdiction in such cases arises out of the possession of the property and is exclusive of the jurisdiction of all other courts, although otherwise the controversy would be cognizable in them. *Wabash Railroad* v. *Adelbert College*, 208 U. S. 38, 54. Accordingly, where property was in the possession of the bankrupt at the time of the appointment of a receiver, it was held that the bankruptcy court had jurisdiction to determine the title to it as against an adverse claimant, and that the receiver had no right to deliver it to him without the order of the court. *Whitney* v. *Wenman*, 198 U. S. 539. On the day the opinion in the *Bardes case* was announced the same justice delivered the opinion of the court in *White* v. *Schloerb*, 178 U. S. 542, a case in which the facts were essentially those of the case at bar. Certain persons, copartners in trade, were adjudicated bankrupts and the case was sent to a referee in bankruptcy. They had a stock of goods in a store, the entrance to which was locked by the referee. Certain other persons claimed title to part of the stock of goods as obtained from them by a fraudulent purchase, which had been rescinded. After the adjudication, these persons brought an action of replevin of the goods against the bankrupt in a state court, which was executed. It was held that replevin would not lie in the state court, and that the District Court had jurisdiction by summary proceedings to compel the return of the property seized. The court said: "The goods were then in the lawful possession of and custody of the referee in bankruptcy, and of the bankruptcy court, whose representative and substitute he was. Being thus in the custody of a court of the United States they

could not be taken out of that custody upon any process from a state court." The last two cases cited proceed upon and establish the principle that when the court of bankruptcy, through the act of its officers, such as referees, receivers or trustees, has taken possession of a *res*, as the property of a bankrupt, it has ancillary jurisdiction to hear and determine the adverse claims of strangers to it, and that its possession cannot be disturbed by the process of another court. And see *Skilton* v. *Codington*, 185 N. Y. 80, 85, 86, and *Frank* v. *Vollkommer*, 205 U. S. 521, which by implication approve the same principle.

We think this principle was lost sight of in the trial of the case before us. We must assume in favor of the plaintiff in replevin that the replevin was completed on the sixth of October, 1903, when the sheriff identified the goods and, at the request of the defendant, left them in place in the store and delivered to the defendants the undertaking, which apparently was accepted by them as good. If, at this time, the show cases were in the possession of the court of bankruptcy; that is to say, were in the possession of Murphy as the receiver appointed by the court of bankruptcy, then, according to principle and in obedience to the express authority of *White* v. *Schloerb*, *supra*, the action of replevin in the state court cannot be maintained. Upon the undisputed facts, as they appeared at the trial, it is impossible to suppose that Murphy had any possession except as receiver. He had no personal interest in the affairs of the bankrupt, and no relation to its property except that created by his appointment to that office. There is but a single circumstance which points the other way, and to that circumstance reference presently will be made. The demand of the plaintiff in replevin for the delivery of the goods was made upon "Edward Murphy, 2d, Receiver," etc. The plaintiff introduced no evidence tending to show that Murphy had any possession except as receiver. When the evidence for the defendant came to be introduced the nature of Murphy's possession was more fully explained. James E. Dodge, presi-

dent of the Dodge Dry Goods Company, and manager of its business, testified that on the twenty-first day of August, 1903, Murphy called at the store and notified him of his (Murphy's) appointment as receiver, and demanded the possession of the assets of the Dodge Dry Goods Company. He says: "The property that I gave him possession of at that time was merchandise and fixtures in the store, also supplies and book accounts; all the property of the Dodge Dry Goods Company. And all the property that was in possession of the Dodge Dry Goods Company. And among the things I turned over to him were included these show cases that are the subject of this action. There was no exception made of the show cases. . . . I handed him the keys of the store, and told him its contents were the property of the Dodge Dry Goods Company. And these show cases were part of the contents at that time. There was no special mention made of the show cases at that time." Murphy testified that at this interview Dodge turned over to him the keys of the building and showed him the property of the Dodge Dry Goods Company, stock, dry goods and merchandise, complete store equipment, consisting of show cases, counters, etc. The show cases were then on the ground floor, and the goods were in them when they were turned over to him as receiver, and he continued to use the show cases in the performance of his duty as receiver, and claimed them as the property of the bankrupt. The defendant offered in evidence the order of the court of bankruptcy, made August 18, 1903, appointing him as receiver, and offered to show that it was exhibited to the sheriff at the time of the replevin. This order, which hereinbefore has been fully set forth, appointed Murphy "temporary receiver of all the property, real and personal," of the bankrupt, directed him to take immediate possession of all the property and to carry on the business. This evidence was excluded, and we think the exclusion was clearly erroneous.

The plaintiff in replevin lays much stress upon one circumstance, as tending to show that Murphy was not in possession

of the property as receiver, but as bailee of the Century Mer-
cantile Company, and to that circumstance more particular
attention must now be given.   Murphy testified upon cross-
examination that he did not include the show cases in the
schedule filed by him as receiver, but this testimony must be
considered in connection with the explanation which accom-
panied it.   Dodge originally had owned the store and had
leased it to the Dodge Dry Goods Company, of which he was
president.   The lease contained a provision - that upon the
bankruptcy of the dry goods company the fixtures, including
the show cases, should become the property of the owner of
the store.   The store subsequently was conveyed to the Cen-
tury Mercantile Company, of which Dodge was also president.
After the stock in trade, including the show cases, had been
turned over to Murphy as receiver, Dodge, acting in behalf of
the Century Mercantile Company, made a demand upon him
for the fixtures and show cases, basing his demand upon the
provision in the lease.   Just how long after the delivery of
possession to Murphy this demand was made is not clear, but
it is enough to say that the demand was subsequent to the
delivery.   Murphy declined to yield to this demand, and
agreed with counsel for the Century Mercantile Company that
the dispute should be decided by the court of bankruptcy.
The defendant offered to show that subsequently the court
decreed that the provision in the lease was void, and that the
fixtures, including the show cases, were the property of the
bankrupt.   This evidence was excluded, and, we think, er-
roneously.   It tended, in connection with other evidence, to
show the nature of Murphy's possession, and that he was in-
sisting upon his right as receiver, and had not accepted the
goods personally as bailee of the Century Mercantile Company.
Pending the settlement of the dispute, and for no other reason
than that the dispute existed, the show cases were omitted
from the inventory.   The facts which have been recited de-
prived this omission of all significance as showing that Murphy
had any other possession than as receiver.

At the trial Murphy relied upon his possession as receiver · to defeat the action. His answer had set up that defense, and in many ways, which it would be unprofitable to set forth in detail, he sought to avail himself of it. It is enough to say that at the conclusion of the evidence the court was requested to direct a verdict for the defendant Murphy, upon the grounds, among others, "That the plaintiff has not shown itself entitled to possession at the time of the commencement of the action, but has shown that the then present right of possession was in the United States Court," and "the plaintiff has not shown that the property was in the possession of the defendant Murphy, but that it was in the possession of the United States Court," and "this Court had no jurisdiction over the subject-matter of this action when it was commenced." The judge presiding at the trial refused, under exception, to give any of these instructions, and submitted the case to the jury in a charge which ·made no reference to the rights of Murphy as a receiver, or to the possession of the property by him as an officer of the court of bankruptcy, other than to say "as the case then stood, Mr. Murphy was claiming· this property as · the receiver of the Dodge Company." The judge instructed the jury that if they should find that the show cases furnished by the Hofman Company had not been accepted by the Dodge Company, then. the title failed to pass and the verdict must be for the plaintiff. Thus the whole Federal question, so far as it was a question of fact, was withdrawn from the consideration of the jury. Subsequently, after a colloquy with the defendant's counsel, in which he stated that Murphy made no claim as an individual to the property in dispute, and did not ask its return to him, the judge, against the objection and under the exception of Murphy, peremptorily directed a verdict for the plaintiff. We do not set forth that colloquy in full, although it is much relied upon by the defendant in error. While the statements of counsel were confused, we think that what was said by him amounted to nothing more than an assertion that Murphy had had no relation to the property,

except as receiver, and that his possession as receiver entitled him to claim for the property thus possessed and controlled, an immunity from the process of the state court.

But one other question needs any attention. It has been seen that the injunction against proceedings in the state court in this case, granted by the judge of the bankruptcy court on October 9, 1903, was vacated about a year later. The reason for this does not appear in the record. The Hofman Company, however, relies upon this vacation of the order of injunction as an abandonment by the court of bankruptcy of its possession of the property and a turning over of it to be dealt with by the state court. We cannot give to the order vacating the injunction this meaning. If it has any tendency whatever to show an abandonment of possession, it is fully explained by much evidence of a dealing with the property by the bankruptcy court, some of which was excluded at the trial.

On the whole case, we are of the opinion that the seizure of these goods on a writ of replevin from another court was an unlawful invasion of the possession of the court of bankruptcy, which cannot be justified by the assertion, entirely unsupported by the evidence, that Murphy was then holding the goods, not as an officer of the court, but as an individual.

*For this reason the judgment is reversed and the case remanded for further proceedings not inconsistent with this opinion.*