## MURPHY v. JOHN HOFMAN CO.

(Supreme Court, Appellate Division, Third Department. May 7, 1913.)

1. BANKRUPTCY (§ 212*)—TITLE TO PROPERTY—CONCLUSIVENESS OF PROCEED-
INGS.

In a bankruptcy proceeding the referee in bankruptcy made an order requiring creditors to show cause on a certain date why all shelving, store cases, etc., placed upon the bankrupt's property and "ever owned by the bankrupt" should not be sold. A copy thereof was served on defendant, who claimed title to certain shelving, and who did not appear on the return date of the order to show cause, but who did appear at the sale and object thereto. A sale was made of whatever rights the trustee in bankruptcy possessed. *Held*, that by his failure to appear and answer the order to show cause defendant was not precluded from afterwards asserting that the bankrupt never owned the property in question, especially as, although the notice specified store fixtures, it did not appear that there were no other store fixtures to which the description could apply.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 236; Dec. Dig. § 212.*]

2. JUDGMENT (§ 743*)—CONCLUSIVENESS—MATTERS CONCLUDED.

A reversal by the United States Supreme Court of a judgment of a state 'court in a replevin action, on the ground that the property was in the possession of the bankruptcy court, and that the state court therefore had no jurisdiction to interfere therewith, was not conclusive as to the bankrupt's title in a subsequent action between the plaintiff in the replevin action and a purchaser from the trustee in bankruptcy.

[Ed. Note.—For other cases, see Judgment, Cent. Dig. §§ 1252, 1253, 1275–1277, 1284; Dec. Dig. § 743.*]

3. JUDGMENT (§ 670*)—CONCLUSIVENESS—PERSONS WHO MAY TAKE ADVAN-
TAGE OF BAR.

A reversal by the United States Supreme Court of a judgment of a state court in a replevin action against a trustee in bankruptcy individually was not available as an adjudication of title to a purchaser from the trustee as trustee; there being no privity between the trustee individually and the purchaser from him as trustee.

[Ed. Note.—For other cases, see Judgment, Cent. Dig. §§ 1181, 1185; Dec. Dig. § 670.*]

4. APPEAL AND ERROR (§ 1099*)—LAW OF THE CASE.

A holding of the Appellate Division, in an action by a purchaser of property from a trustee in bankruptcy for conversion, that evidence should have been admitted to show that the bankrupt and the trustee never acquired title was conclusive on a subsequent appeal against the contentions that the proceedings before the referee in bankruptcy and in an action against the trustee were res judicata as to the title.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 4370–4379; Dec. Dig. § 1099.*]

5. BANKRUPTCY (§ 140*)—OWNERSHIP OF PROPERTY—SALES—QUESTIONS FOR
JURY.

Defendant built and installed in the D. Company's store certain fixtures. Thereafter the D. Company wrote defendant, complaining of delay in delivery; that a certain glove case was not the one called for by the contract, stating that the company did not accept such case as meeting the requirements of the contract; complaining that the glass in another case was broken, and adding that it would take up the whole matter for the purpose of reaching some adjustment, and would be glad to adjust it on a fair and proper basis, but that pending such result it refused to accept

"your case and work." Later its president wrote defendant, claiming damages for the delay and poor workmanship, in which he stated that, for the purpose of putting the matter in some definite form, he suggested that the company retain the fixtures upon defendant making the allowances therein specified, and that if defendant would meet that proposition, then the company would accept "your case" and close the matter on that basis; but that if defendant decided not to accept that proposition it was made solely for the purpose of compromise and without prejudice to the company's rights to demand full damage. The D. Company used the cases, and while the controversy was pending went into bankruptcy. *Held*, that on evidence of these facts it was a question for the jury whether the D. Company accepted the cases, other than the glove case, so as to acquire title prior to its bankruptcy.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 198, 199, 219, 225; Dec. Dig. § 140.*]

Kellogg and Howard, JJ., dissenting.

Appeal from Trial Term; Rensselaer County.

Action by William E. Murphy against the John Hofman Company. From a judgment for defendant, and from orders denying a new trial and granting an extra allowance, plaintiff appeals. Affirmed.

See, also, 140 N. Y. Supp. 1132.

Argued before SMITH, P. J., and KELLOGG, HOUGHTON, LYON, and HOWARD, JJ.

Shaw, Bailey & Murphy, of Troy, for appellant.
James Farrell, of Troy, for respondent.

SMITH, P. J. This is the third appeal in this action to this court. The first appeal was from a judgment overruling defendant's demurrer to plaintiff's complaint. This judgment was here affirmed. Thereafter the defendant answered, and upon the trial plaintiff secured judgment for about $900. Both parties appealed. The court reversed that judgment and ordered a new trial. 151 App. Div. 353, 135 N. Y. Supp. 416. In the opinion of Justice Kellogg the facts are only partly stated.

The Dodge Dry Goods Company had ordered from the defendant certain show cases in 1903. Fault was found by the said company as to the construction at least of one case and as to the installation of others. The defendant there contended that the cases were in proper form and properly installed. While this controversy was still pending, the Dodge Dry Goods Company went into bankruptcy. The sole question of fact submitted to the jury upon the trial here for review is whether, before going into bankruptcy, the Dodge Dry Goods Company had accepted these goods. If so, the title passed to them, and the sale to plaintiff passed the title to him. The jury has found the title did not pass, and that the defendant could lawfully retake the property. Whether this finding is against the weight of evidence will be hereafter discussed.

[1] Plaintiff first contends that the defendant is barred by an adjudication of the bankruptcy court from questioning title to the property in the Dodge Dry Goods Company. After the goods were taken possession of by the bankruptcy court, the referee made an order, di-

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

rected to the creditors of the bankrupt, requiring said creditors to appear before him at a certain date to show cause "why the property below mentioned should not be sold." The order provided that if no cause be shown the trustee in bankruptcy would, upon the 10th day of October, 1904, sell the said land upon which the building was situated, with the structures thereupon, "and all shelving, store cases, cash system, machinery, appliances, partitions, railings, store fixtures and furniture erected and placed upon said property and *ever owned by the bankrupt* and not part of the realty." A copy of this order was served upon the defendant, but the defendant did not appear. Thereafter this shelving was sold at the public sale mentioned, and was purchased by the plaintiff. At the sale, however, this defendant appeared and objected to the sale, claiming title to said property, and the sale was made of whatever rights the trustee in bankruptcy was possessed therein. Plaintiff's contention is that by failing to appear before the referee in bankruptcy and there contesting the ownership of this property the defendant has foreclosed itself from ever questioning the title of the Dodge Dry Goods Company, or of the trustee in bankruptcy. But while the notice specified certain store fixtures as part of the property to be sold, it does not appear that there were not other store fixtures to which the description could apply; and, moreover, the property to be sold was limited to property "ever owned by the bankrupt." If the defendant, therefore, can prove that this property was never owned by the bankrupt, he is not precluded from questioning the right of the bankrupt thereto because of his failure to appear in response to this notice.

[2, 3] Again, prior to this sale in bankruptcy, and after the trustee in bankruptcy had possession of the bankrupt estate, this defendant had brought an action in the state court against Edward Murphy, second, who was in fact the trustee in bankruptcy. The action, however, was brought against him individually, and not as such trustee. The action was in replevin to recover possession of this property, and under replevin process this property was taken and delivered to this defendant. In the state courts this defendant was successful. Upon writ of error, however, to the United States Supreme Court the judgment of the state court was reversed, upon the ground that when the action was brought the property was in the possession of the Bankruptcy Court, which fact left the state court without jurisdiction to interfere therewith. Thereafter that action was discontinued, by stipulation between the parties, "upon the merits," and the order of discontinuance entered in compliance with said stipulation. It is contended by the plaintiff that this was an adjudication, as against this defendant, as to the right of the trustee in bankruptcy to hold the property. The difficulty, however, with the plaintiff's contention seems to be twofold: First, the action failed by reason of the lack of jurisdiction in the state court, because the property was then in the possession of the United States court. The adjudication was not as to the title of the defendant or of Edward Murphy, second, but as to the right to try that title in the state court while the property was in possession of the federal court. Since the commencement of that action, however, the property has been sold by the trustee in bank-

ruptcy to this plaintiff. It is no longer in the possession of the United States court in bankruptcy. If it were, this action would not lie by the plaintiff for its recovery. The second difficulty with the plaintiff's contention is that this plaintiff is in no way in privity with the defendant in that action. If the defendant had been sued as trustee in bankruptcy, there might possibly be claimed such privity as would make an adjudication therein available to this plaintiff. The plaintiff did not purchase from Edward Murphy, second, individually, but from him as trustee, and whatever adjudication may have been made in that action against Edward Murphy, second, personally could not bind this plaintiff, and upon the doctrine that estoppels must be mutual can avail him nothing.

[4] I have discussed these questions of law because they have not been fully discussed in any prior opinion of the court. It may be said, however, that as for this appeal the former decision of this court (reported in 151 App. Div. 353, 135 N. Y. Supp. 416) would seem to have settled these questions. We there held upon these facts, appearing practically as they now appear, that the court should have admitted evidence, which was there excluded, to the effect that the bankrupt or the receiver never had received title to this property. This holding could only follow from our conclusion that the proceedings before the referee in bankruptcy, or in the action by this defendant against Edward Murphy, second, were not conclusive in this action. The trial court having followed the rule of law which we thus laid down, the more orderly procedure for this court, even were the judges of differing opinion, would be to affirm the holding of the trial court in accordance with our former decision, and let the Court of Appeals hold otherwise, if that court should deem our holding to have been erroneous.

[5] This brings us to the third contention of the plaintiff, that the verdict is against the weight of evidence. These fixtures were built and installed in the Dodge Dry Goods Company's store by the defendant. Thereafter and upon June 16, 1903, the Dodge Dry Goods Company wrote to the defendant, complaining that the cases had not been delivered at the time specified in the contract, and substantial losses had resulted to them therefrom. Further complaint was made that a certain glove case was not the glove case which was called for by the contract and specifications. In reference thereto the letter says:

"We do not of course accept this case as meeting the requirements of the specifications and contract, and thereby so notify you."

Complaint was made as to another case, wherein plate glass at the ends were broken. The letter concludes that the writers would take up the whole matter for the purpose of reaching some adjustment, and states that if the matter can be adjusted on a fair and proper basis the Dodge Dry Goods Company would be glad to do so, and concludes:

"However, pending such a result we refuse to accept your case and work."

Again, upon June 20th Mr. Dodge, as president of the Dodge Dry Goods Company, writes another letter, in which he claims damages

to the amount of $2,222, caused by the delay and by the poor workmanship· of the defendant. The letter then states:

"Now, if you will meet the proposition here made for the purpose and for the sole purpose of avoiding any controversy or litigation about the matter, then we will accept your case, etc., and close the matter on that basis. If, however, you decide not to accept this proposition, then it is understood that it is made solely for the purpose of compromise and without prejudice to our rights to demand our full damage."

It is insisted by the plaintiff that these letters indicate intention to reject the glove case simply, and to retain the balance of the cases, claiming damages only as a partial offset to the purchase price. It is claimed that this intention is further indicated by the fact of the actual use to which the Dodge Dry Goods Company at once put these cases, using them regularly in their store in the usual course of trade. On the other hand, in the letter of June 20th there appears this sentence:

"But for the purpose of putting the matter in some kind of definite form, and as a proposition of settlement without litigation, we suggest that we retain the fixtures upon your making to us the following allowances, as our damage for delay and imperfect performance of the contract."

This would seem to indicate that their intention to retain the fixtures, other than the glove case, was dependent upon a fair adjustment of their claim for damages. The fact that the Dodge Dry Goods Company made use of the cases would seem to have little significance, in view of the fact that to refuse to use them pending the adjustment of the differences would only increase the damage to which the defendant would be liable. While it may be true that the Dodge Dry Goods Company intended eventually to accept these cases after such allowance thereupon as could be obtained, it may well be claimed that until the bankruptcy no such acceptance had in fact been made, and the question was therefore properly left to the jury to determine, and we cannot say that their determination is against the weight of evidence. I advise, therefore, that the judgment and orders be affirmed, with costs.

Judgment and orders affirmed, with costs. All concur, except KELLOGG and°HOWARD, JJ., dissenting, each in memorandum.

JOHN M. KELLOGG, J. (dissenting). The defendant had no right to reject the show cases if they were constructed and delivered according to the contract. There is no claim that any of them were not constructed according to the contract, except the glove case. Aside · from the objection to the glove case, the Dodge Company claimed damages for delay in delivery and for a broken glass in one of the other cases. The defendant evidently claimed that the show cases were properly constructed, and that the company must accept them. There is no evidence indicating whether or not the Dry Goods Company had the right to reject the cases. If the cases complied with the contract, they became the property of the Dodge Company, notwithstanding its protests. The defendant is not now contending that the show cases were not constructed and delivered according to the contract. The defendant has no more right, after the bankruptcy, to change its posi-

tion and elect to take back the cases than the other company has to change its position and keep them. The rights of the parties depend upon the questions whether there was a right to reject the cases, and if there was such right whether they were rejected. The correspondence and the use of the show cases for months make an acceptance of all the cases, except, perhaps, there was a question of fact with reference to the glove case. I therefore favor a reversal.

HOWARD, J. (dissenting). In Murphy v. John Hofman Co., 211 U. S. 562, 29 Sup. Ct. 154, 53 L. Ed. 327, it was determined that the sheriff, acting in the replevin action instituted by the John Hofman Company in the state court, had no right to seize the property in question and take it out of the possession of the federal court. It was also there determined that the state court acquired no jurisdiction of the subject-matter, had no authority to issue mandates, and had no authority to try the title to the property; that is, it was determined that the seizure of the property by the sheriff and its subsequent sale by him were wholly unlawful. These propositions being absolutely and finally determined by the court of last resort, the plaintiff in this action before us, relying upon the law as thus settled, brings this suit to recover the damages which he has sustained by this unlawful seizure and appropriation of his property.

No issue of title was tendered by the pleadings herein; but if such an issue had been presented the trial court was wholly without jurisdiction to hear it. Murphy v. John Hofman Co., 211 U. S. 562, 29 Sup. Ct. 154, 53 L. Ed. 327; White v. Schloerb, 178 U. S. 542, 20 Sup. Ct. 1007, 44 L. Ed. 1183. That the defendant failed to try the issue of title in the proper forum is foreign to the question here.

The assertion that the "receiver could obtain no better title than the bankrupt had" was not available in the state court. That assertion, a statement of law to which everybody assents, could only be urged in the federal court; that being the only court having jurisdiction of the question of title. Had the replevin action been started before the federal court took possession of the property, the state court would, of course, have had cognizance of the question of title; but the federal court having acquired jurisdiction, its jurisdiction continues, to the complete and final exclusion of the state court, until a determination is reached. The state court, by unlawfully wresting possession of the property from the federal court, cannot thus acquire to itself jurisdiction. Jurisdiction will not shift constantly from one tribunal to another. When once acquired, it remains firm and permanent.

The judgment should be reversed and a new trial granted.