WILLIAM E. MURPHY, Appellant, *v.* JOHN HOFMAN COMPANY, Respondent.

Third Department, March 7, 1917.

Conversion — action for damages for wrongful removal of show cases from store — who may maintain action — damages — when defendant cannot be charged with acting arbitrarily or unreasonably.

The wrongful taking and sale at public auction of show cases belonging to the plaintiff is such an invasion of his rights as to entitle him to recover therefor, even though they were in the possession of a third party as tenant or merely as bailee. The general or special owner in such case may maintain the action.

The plaintiff having purchased the cases from his tenant, to whom they had been sold at such sale, may recover the purchase price with interest thereon from the date of the wrongful removal thereof by the defendant.

But the defendant cannot be charged with acting arbitrarily or unreasonably, since the State and Federal courts have had much difficulty in finally determining that the show cases belonged to the plaintiff, and that the defendant wrongfully took them.

SEWELL, J., dissented.

APPEAL by the plaintiff, William E. Murphy, from a judgment of the Supreme Court in favor of the defendant, entered in the office of the clerk of the county of Rensselaer on the 24th day of June, 1916, upon the decision of the court dismissing the complaint, a jury having been waived.

*Shaw, Bailey & Murphy* [*H. C. Bailey* of counsel], for the appellant.

*James Farrell,* for the respondent.

KELLOGG, P. J.:

On the 14th day of October, 1904, the defendant wrongfully removed from the plaintiff's store his show cases, against his protest, and sold them at public auction, and thereby became liable to pay the value of the property so illegally taken. (*Murphy* v. *John Hofman Co.,* 215 N. Y. 185.)

The ownership of the show cases was in doubt, and the courts have had much difficulty in finally determining that they belong to the plaintiff and that the defendant wrongfully took them. (*Murphy* v. *John Hofman Co.,* 211 U. S. 562; 138 App. Div. 931; 151 id. 353; 157 id. 88.)

The judgment appealed from denies to the plaintiff payment for the show cases illegally taken by the defendant, upon the ground that the plaintiff was not in possession of them at the time of the illegal taking and that, they having been returned to the plaintiff, he had suffered no damage by the defendant's wrongful act.

It is unnecessary to discuss the terms of the lease of the store, fixtures and furnishings to Edwards & Son. The term of the lease was to begin November 1, 1904, and continue for two years at a rental of $10,000 per year. The tenants, from the date of the lease, October 12, 1904, until November 1, 1904, were permitted to go into possession in consideration that they would furnish heat and elevator service to the other tenants in the building. The wrongful taking and sale of the property at public auction was such an invasion of the plaintiff's rights that he could recover for the loss of his property, no matter whether the possession of Edwards & Son was as tenants or merely as bailees. The general or special owner in such a case may maintain the action. (*Davis* v. *Morrell,* 16 N. Y. Wkly. Dig. 530; *First Commercial Bank* v. *Valentine,* 209 N. Y. 145, 150; *Johnson* v. *Blaney,* 132 App. Div. 925; 198 N. Y. 312, 316.)

When the defendant illegally took and sold the property at public auction, the plaintiff had a complete cause of action for its value. The defendant could return the property to the plaintiff and thus mitigate in whole or in part plaintiff's damages. If it returned the property it would remain liable for any damages suffered by the plaintiff while the property was illegally held. If the property was promptly returned by it in as good condition as when taken, the damages, under ordinary circumstances, would not be large. In such a case the wrongdoer relents and returns the property, and clearly should not in addition be required to pay its full value, thus giving the owner the property and also its value. This is not such a case. Apparently it was important for Edwards & Son to have the show cases in order to properly open their store November first, and, therefore, they purchased them at the auction sale, paying therefor $2,800, and returned them to the store before November first. The plaintiff thereupon purchased the show cases of

them, paying $2,800 therefor and for any damages sustained by them. 'Apparently this was done to make peace with the tenants and·to deliver to them the leased property according to the lease, and it was undoubtedly recognized that the title to the show cases was not free from doubt. The plaintiff had the right to make this adjustment with his tenants. It was not made for the benefit of the defendant; defendant had no part in the transaction and did not in any way return the property to the plaintiff. It still retains the money which it received from the illegal sale of the plaintiff's property. In brief, the defendant wrongfully took the plaintiff's property from his store and has never returned it to him, and the plaintiff has been compelled to pay $2,800 to get his property back. It cannot be said that the plaintiff has suffered no injury by the defendant's illegal act, or that the plaintiff has returned the property, or that the defendant is entitled to mitigate the damages on account of the fact that the plaintiff has been compelled by its illegal act to purchase his own property. The judgment, should, therefore, be reversed.

There is some difficulty in directing judgment for the plaintiff, as it is not entirely clear that the amount of damages proven upon the trial is correct. The defendant offered no evidence as to value. We cannot say whether it was satisfied with the value shown, or whether it was willing to rely entirely upon the defenses urged. Defendant cannot be charged with acting arbitrarily or unreasonably when it has taken the State and Federal courts so long to determine that it had illegally taken the plaintiff's property. It is clear that the property when taken was worth $2,800 at least; it is not clear upon the record that the plaintiff should have judgment for more. I favor a reversal of the judgment, and if plaintiff within ten days files a stipulation that the damages may be fixed at $2,800, with interest thereon from October 14, 1904, judgment should be directed reversing the judgment, with costs, and directing judgment for plaintiff for that amount, with interest and costs. If such stipulation is not filed, the judgment should be reversed and a new trial granted, with costs to the appellant in both courts to abide the event.

All concurred, except SEWELL, J., dissenting.

Judgment reversed. A new trial is granted, with costs to appellant to abide the event, unless the plaintiff files a stipulation that the damages may be fixed at $2,800, with interest thereon from October 14, 1904; in which case judgment is directed accordingly, with costs in both courts.