[Civ. No. 6196. Second Appellate District, Division One.—February 27, 1929.]

LOS ANGELES CREAMERY CO. (a Corporation) et al., Respondents, v. M. LEVINSON, Appellant.

Schweitzer & Hutton and B. R. Ware for Appellant.

Zach Lamar Cobb and Earl A. Littlejohns for Respondents.

YORK, J.— Appellant objects strenuously to the judgment on the ground that the respondents are attempting to secure a judgment from a state court in a matter, which, they contend, has been fully passed upon by a United States court.

An examination of the transcript does not bear out this objection.

This action, as we view it, is an action for an accounting for moneys received by the defendant Levinson as profits accruing from the purchase and sale of certain assets, the sale being one held under the jurisdiction of the United States court in a bankruptcy proceeding. The respondents also ask for a judgment decreeing that such profits were held by defendant Levinson in trust for the use and benefit of the bankrupt estate, and therefore incidentally for the plaintiffs in this case and other creditors thereof.

The trial court in its findings found that the Los Angeles Creamery Company, Kahn-Beck Co., Leo Levy, O. L. Bishop, Chas. Winkelman, Joseph Weinblatt, Ray Levy, and M. Reingold were unsecured creditors of the bankrupt estate, and found the respective amounts due to each creditor. The trial court further found that ten per cent only of their claims had been paid and that each and all of said claims had been proved for the amounts specified in the findings. The trial court found the particular facts as to a fraud committed by the defendant Levinson at the sale held

by the trustee in bankruptcy under the order of the federal court, wherein and whereby the defendant Levinson prevented bidders at said sale from bidding the full value of the property to be sold by said trustee, and particularly by threatening to appeal from any order or judgment affirmed by the United States district court, even, if necessary, to the supreme court of the United States, and that each and every bid made at such sale was affected by such threat, and that the full value of the property sold by said bankrupt was not received because of such threat.

The trial court found in detail that a secret agreement with one Gus Compselides was made by the defendant Levinson wherein and whereby it was agreed that Compselides was to refrain from bidding at the sale, and that in the event that said Levinson, through his agent and dummy, Hardstein, was successful in purchasing the said assets at the bankrupt sale, a net secret profit to Levinson of $20,000 would be paid. That secretly at the time of the sale the defendant Hardstein represented the defendant Levinson and that Compselides, then and there secretly authorized the said Hardstein to bid the sum of $17,000 for the assets sold by the referee, with the understanding that he, Compselides, would purchase said assets, together with a certain "Coffee Shop" lease, from Levinson, for the sum of $37,000.

After finding in detail the way in which said transaction was finally consummated, the court found that defendant Levinson received a secret profit of $20,000 from Compselides and his associates; that the existence of this secret agreement was not known to any of the creditors of the bankrupt estate, nor to the trustee in bankruptcy, nor to the referee in bankruptcy, until after the referee's order confirming the sale had become final, nor until about the time of the commencement of this action.

The nearest authority among the many authorities cited seems to be the case *In re Chas. Knosher & Co.* v. *Baxter,* in an opinion by Judge Morrow of the United States circuit court of appeals for the ninth district, and concurred in by Judges Gilbert and Ross, appearing in 197 Federal Reporter beginning at page 136, but quoting from page 141. It is stated, among other things: "It is clear that, if the creditors of the bankrupt were entitled to any relief by reason of the alleged inadequacy of the price received for

the stock of goods, it was not by summary proceedings, but should have been obtained through the trustee in an action against John Anisfield Company, for an accounting, and if the trustee and his attorneys were hostile to the proceeding, as intimated, but not established, he could have been required by order of the bankruptcy court to permit the use of his name in such an action with new attorneys, or, failing in that, the trustee could have been removed and a new trustee appointed with new attorneys instructed to proceed by proper action to determine the rights of the bankrupt estate in a plenary action."

This case was first filed by certain creditors for the benefit of all creditors; thereafter the trustee of the bankrupt estate, by leave of and under an order of the referee in bankruptcy of the district court of the United States for that district, acting for that court after an order for him so to do was duly made and entered, filed in this action an amended complaint, and on his complaint so filed this cause was tried and determined.

The findings made by the trial court are too voluminous to be herein set forth in full, but they are sufficient to support and justify the judgment rendered by the trial court that the plaintiff Wm. H. Moore, Jr., as trustee for the creditors of the bankrupt stock of Levy's, Inc., is entitled to recover from the defendant Levinson a portion of said $20,000, to wit, the sum of $13,333.33, together with interest thereon.

The stipulations made between the parties hereto and the evidence justified the trial court in making each of the material findings made by it.

For the foregoing reasons the judgment is affirmed.

Houser, J., concurred in the judgment.

CONREY, P. J., Concurring.—I concur in the judgment. This is an appeal from a judgment against the defendant M. Levinson in an action to establish an involuntary trust in the defendant Levinson, and to recover from him profits fraudulently obtained by him in connection with a sale by the trustee in bankruptcy of certa · assets of a bankrupt estate.

On the second day of April, 1922, and thereafter, appellant was the owner of certain adjoining premises known as 6409 Hollywood Boulevard, city of Los Angeles, hereinafter referred to as "the coffee shop," and 6413 Hollywood Boulevard, hereinafter referred to as "the cafe." On April 2d appellant leased the cafe to Levy and Ziddell at a rental of $450 per month, and on August 9, 1923, leased the coffee shop to Levy's, Inc., at $350 per month. The term of each lease was to expire on the thirty-first day of May, 1932. The first lease was afterward transferred to Levy's, Inc. On January 25, 1924, Levy's, Inc., was adjudged bankrupt by the district court of the United States for the southern district of California. The leased property, including certain personal property therein contained, was taken into possession by the trustee in bankruptcy. Thereafter the lessor, Levinson, claimed that the rights of the lessee in the leased premises had been forfeited by breach of conditions contained in the leases, and instituted proceedings before the referee in bankruptcy to obtain an order requiring surrender of said premises to the lessor. The referee granted the order as to the coffee shop, but denied it as to the cafe. This order was made on the nineteenth day of March, 1924, and the right of Levinson to appeal therefrom expired on the thirtieth day of March, 1924.

After the referee had announced his decision on the issue concerning these leases, but before entry of the order, the trustee in bankruptcy filed a return of sale showing that he had sold to one Hardstein, at the price of $10,000 all of the right, title and interest of the lessee and of the trustee in bankruptcy in said leases and personal property. The matter of the confirmation of the sale came up for hearing before the referee on the twentieth day of March, 1924. Objections to confirmation of sale were made by some creditors, for various stated reasons. So far as appropriate for consideration here these grounds of protest were that Hardstein was not a *bona fide* purchaser, but was in fact acting as dummy for Levinson, "for the purpose of depriving the estate of the value of said lease"; that Levinson, Hardstein, and one Klemtner, had conspired together for the purchase of the bankrupt estate assets for the use and benefit of Levinson and Klemtner, for the purpose of enabling said

Klemtner to obtain the assets, including the said lease, for a grossly inadequate consideration, and under an agreement that the leases should be transferred to Klemtner on the basis of a cash bonus to Levinson of the sum of $15,000; that Levinson and Klemtner had conspired together to decrease the sale price of the property, and particularly that Levinson, by threatening to appeal from the order made adversely to him in relation to the cafe property, had made the lease practically unsalable by the trustee. There was much discussion before the referee by some of the creditors, and by counsel for the several parties, and some evidence was taken, and sundry stipulations were made concerning the matter at issue before the referee. In the course of these transactions additional bids were made alternately by Hardstein and by one Hoffman, ending in a bid of $17,000 by Hardstein. It appeared that the original deal between Levinson and Klemtner had been rescinded, and that Klemtner was "backing" the Hoffman bids. It was admitted that Hardstein was representing and acting for Levinson in making the Hard-. stein bids. When the matter was finally submitted the referee confirmed the sale to Hardstein at $17,000. This was followed by transfer of the property by the trustee to Hardstein. Thereafter Hardstein, at the instance of Levinson, transferred all of said property, together with the coffee shop lease, to one Compselides, for a total consideration of $37,000.

Thereafter, on the twenty-seventh day of June, 1924, the original complaint in this action was filed. It was actually tried upon a second amended complaint and the answer thereto. The essential facts which lie at the foundation of this action are shown in the findings of the court, which, after reciting many facts, including those hereinabove stated, continue as follows:

"That prior to the said sale the said defendant Levinson entered into a secret agreement with one Gus Compselides, wherein and whereby it was agreed between them that said Compselides would refrain from bidding at said sale, and that in the event that said Levinson, through his agent and dummy, Hardstein, was successful in purchasing the said assets at the bankrupt sale for the sum of $10,000, that said Compselides would buy the same together with the 'Coffee Shop' lease, from Levinson for a net secret profit to

Levinson of $20,000; and that pursuant to said secret agreement said Compselides was present in court at the time of said sale, sat alongside of the defendant Hardstein, who represented the defendant Levinson, and, after the bidding had reached the point of $16,000, secretly authorized said Hardstein to bid the sum of $17,000, with the understanding that he, Compselides, would purchase said assets and said 'Coffee Shop' lease from Levinson for the sum of $37,000. That pursuant to and because of said agreement the said Compselides did refrain from bidding at said sale, and the defendant Levinson, through his agent, Hardstein, purchased the assets for $17,000, and immediately thereafter sold the same, together with the 'Coffee Shop' lease, to said Gus Compselides and his associate, Tom Michas, for the sum of $37,000, and received a secret profit of $20,000 from said Compselides and his associate.''

The court then found that, apportioned according to the relative market value of the two leases, two-thirds of the profits so received by Levinson were paid in consideration of the cafe lease and the other one-third in consideration of the coffee shop lease; that neither the plaintiffs nor any of the creditors, nor the trustee in bankruptcy, nor the referee, knew anything about the said secret agreement until the referee's order confirming the decree had become final, and about the time of the commencement of this action. The court entered judgment against Levinson for the sum of $13,333.33, with interest and costs. It is from this judgment that the defendant Levinson appeals.

It is contended by appellant that the superior court had no jurisdiction over the subject matter of this action; that the cause of action remained exclusively within the jurisdiction of the United States district court as a court of bankruptcy. Section 2 of the Federal Bankruptcy Act [11 U. S. C. A., sec. 11], vests in the district courts of the United States ''such jurisdiction at law and in equity as will enable them to exercise original jurisdiction in bankruptcy proceedings.'' Section 23 of the same act [11 U. S. C. A., sec. 46], provides that the United States district courts shall have jurisdiction ''of all controversies at law and in equity, as distinguished from proceedings in bankruptcy, between trustees as such and adverse claimants concerning the property acquired or claimed by the trustees, in the same

manner and to the same extent only as though bankruptcy proceedings had not been instituted and such controversies had been between the bankrupts and such adverse claimants.'' It is further provided that ''suits by the trustee shall only be brought or instituted in the courts where the bankrupt, whose estate is being administered by such trustee, might have brought or prosecuted them if proceedings in bankruptcy had not been instituted, unless by consent of the proposed defendant'' (with certain exceptions of no present interest here).

An adequate discussion of the questions raised by appellant in his challenge to the jurisdiction of the superior court would require a very extended statement of the decisions which have construed and applied the bankruptcy laws. Among the important cases cited by counsel for appellant I need only refer to *Bardes* v. *First National Bank of Hawarden,* 178 U. S. 524 [44 L. Ed. 1175, 20 Sup. Ct. Rep. 1000]; *Babbitt* v. *Dutcher,* 216 U. S. 102 [17 Ann. Cas. 969, 54 L. Ed. 402, 30 Sup. Ct. Rep. 372]; *Murphy* v. *Hofman Co.,* 211 U. S. 562 [53 L. Ed. 327, 29 Sup. Ct. Rep. 154, see, also, Rose's U. S. Notes]. Probably the most directly applicable authority offered by respondents is *In re Knosher* v. *Baxter,* quoted in the preceding opinion by Mr. Justice York. I have reached the conclusion that a cause of action arising out of the right to sue for and recover secret profits, obtained by fraudulent means in connection with a judicial sale of assets of a bankrupt estate, presents a case within the general jurisdiction of a court of equity. Where the parties reside in different states and the amount involved is sufficient the action would properly be brought on the chancery side of a United States district court. Where the parties all reside within the same state the action is properly brought in a state court. The assets of the bankrupt estate, which were the subject of the sale made by the trustee and confirmed by the referee in bankruptcy, have passed out of the control of the district court as a court of bankruptcy. The title to that property is gone from the estate. If, in connection with those proceedings of sale, and by some secret fraudulent acts committed by the purchaser, he has made profits which in equity and of right should be restored to the estate, there appears to be no instrumentality other than a court of equity capable of judicially ascertaining the facts

and enforcing the appropriate remedy. This is an appropriate instance for applying the rule stated in *Cocks* v. *Izard*, 7 Wall. 559 [19 L. Ed. 275], where the court said that "where a judicial sale is impeached for fraud or unfair practices, of officer or purchaser, to the prejudice of the owner, a court of chancery is the proper tribunal to afford relief."

The other principal point which appeals to me as requiring further comment is found in appellant's contention that the order of the referee confirming the sale to Hardstein is conclusive upon all questions involving the fairness and integrity of the sale, and therefore is *res judicata* with respect to the subject of this action. It is true that the creditors, at the sale, in the course of their objections to the sale to Hardstein, insisted that Hardstein was only a dummy for Levinson, and that Levinson, by his conduct, was interfering with the sale and was preventing the presentation of adequate bids. It is true that in confirming the sale the referee must have held that under all of the circumstances existing at the moment of confirmation these objections were not sufficient. If it must be held that the transactions between Levinson and Compselides, although unknown to others at the time of the confirmation of the sale, were merely additional evidence which, if it had been discovered and produced, would have supported the charges of the creditors then objecting to the confirmation of the sale, then it might well be argued that the order of confirmation is *res judicata* with respect to the issues of the present action. But I think it may be reasonably concluded and held that the fraudulent conduct of Levinson in his secret transactions with Compselides was more than merely additional evidence which might have been used to prove that Levinson was interfering with free and fair bidding at the sale. It was a separate and distinct fraudulent transaction, different from and separate from his openly asserted claim made at the sale, that the cafe lease had been forfeited and was not properly an asset which the trustee had any right to sell. It was apart from and different from the earlier transaction between Levinson and Klemtner. While the deal with Klemtner had resulted in the original $10,000 bid, that arrangement had been rescinded before the day of the confirmation of the sale, and was no longer in existence as an obstruction to bids at the time when

the additional bids were made in the presence of the referee. The result is, in my opinion, that the cause of action upon which the present judgment rests is not concluded by the decision and order of the referee in confirmation of the sale. For these reasons I concur in the judgment here affirming the judgment of the superior court.