In re TAX SERVICE ASS'N OF ILLINOIS.
HARRIS et al. v. AVERY BRUNDAGE
CO. et al.
No. 6355.

Circuit Court of Appeals, Seventh Circuit.
March 9, 1938.

Rehearing Denied April 11, 1938.

Kenart M. Rahn, of Chicago, Ill., for appellants.

Sigmund W. David, of Chicago, Ill., for appellees.

Before EVANS, SPARKS, and MAJOR, Circuit Judges.

MAJOR, Circuit Judge.

This is an appeal from orders of the District Court, in a bankruptcy proceeding,

directing that certain funds be turned over to appellees. The latter are contractors, members of various trade associations, and on April 9, 1935, through such associations, entered into an agreement with the Tax Service Association of Illinois, the alleged bankrupt, by which the latter agreed to act for the members of such associations in litigating the question of whether the Illinois retailers' occupation tax, commonly known as the sales tax, applied to contractors. The alleged bankrupt, in accordance with said agreement, was paid $1,500 in advance and was to receive an additional compensation not to exceed $20,000 if the Supreme Court of Illinois decided the sales tax question favorable to appellees. The alleged bankrupt agreed to retain Benjamin F. J. Odell, one of the appellants, to act for and on behalf of appellees, but without expense to them, and it, in conjunction with Odell, was to have control of the procedure to be followed in making the monthly tax returns as was provided by the Sales Tax Act, Smith-Hurd Ill.Stats. c. 120, § 440 et seq., including the escrowing or depositing of the same. The agreement was signed on behalf of the alleged bankrupt by appellant Harris, its vice president; and Odell, in writing, consented to his employment according to the terms of the agreement. Shortly after the execution of said agreement, appellants Odell and Harris, together with E. M. Craig, directed a letter to the National Builders Bank of Chicago, calling the bank's attention to the opening of an account in the said bank entitled sales tax escrow fund. The letter specifically stated that these three persons had no interest in the funds, but that the same were under their custody and control pending the outcome of proposed negotiations with the Department of Finance of the State of Illinois, and the letter also contained directions that the funds were to be paid out only on checks signed by the persons whose signatures appeared on the letter. Odell conducted negotiations with the State Finance Department and also instituted a suit in the circuit court of Cook county for the purpose of obtaining a construction of the act which would exempt appellees from the payment of the tax. He was not successful in the circuit court and appealed the matter to the Supreme Court of the State, Blome v. Ames, 365 Ill. 456, 6 N.E. 2d 841, 111 A.L.R. 940, where he was also unsuccessful. In the meantime, appellees made their monthly tax returns to the alleged bankrupt, which kept records showing the amounts paid by each and which sums were deposited in the escrow fund.

On May 3, 1937, an involuntary petition in bankrupcy was filed against the Tax Service Association of Illinois, but, for some reason which we are unable to ascertain from the record, an adjudication has not been made. At such time there was in the escrow fund $297,000, and on May 24, 1937, appellees, by a sworn petition, intervened in the bankruptcy proceeding, alleging that said money belonged to them and requested that it be returned. At that time the books and records of the bankrupt, as well as the tax returns and duplicates made by appellees, were in the possession of appellants, who appellees claim were merely acting as the agents of the bankrupt.

On May 26, 1937, an agreed order was entered, returning to appellees 75 per cent. of the money in the escrow fund. The order recited that all the interested parties, including appellants, appeared in open court and agreed that the court had jurisdiction and consented to its entry. The order, among other things, decreed that the balance of the money in the escrow fund was $72,758.75 and the same should remain and be held in said escrow fund in the National Builders Bank of Chicago, subject to the further order of the court. In said order appellants were given until June 3d to file their answer or other pleadings to appellees' petition, at which time an answer was filed alleging the court to be without jurisdiction to determine any rights relating to the escrow fund.

In the meantime it had been ascertained, of the $72,758.75 in the escrow fund, $68,580.40 belonged to appellees. It seems that Odell had represented certain other clients whose sales tax money had been deposited in the fund, which accounts for the discrepancy in the amount stated. The receiver of the bankrupt, by answer, claimed that by reason of the agreement of April 9, 1935, he was entitled to $20,000 of this fund. June 29, 1937, appellees filed a petition asking that $48,580.40 be turned over to them, leaving $20,000 in the fund, about which there might be a dispute. Appellants again objected solely upon the grounds that the court was without jurisdiction to determine to whom the fund belonged. The court determined it had jurisdiction, both of the parties and the res. While appellants contend they have never been given an opportunity to answer the petition as to its merits and have never had a hearing upon the

same, the order of the court entered June 29, 1937, recites: "The court thereupon directed said Benjamin F. J. Odell, R. G. Harris and the Tax Service Association of Illinois; and each of them, to answer said petition, and each of them thereupon stated that they did not desire to answer said petition," and further recites that they desire to stand upon the jurisdictional question theretofore raised. The petition and the answer raising the jurisdictional question were referred to a referee, who, on July 7, 1937, made his report. The referee recommended that appellees' request be allowed, and that the sum of $48,580.40 be paid to the appellees, which, by the terms of the report left $20,000 in the escrow fund. The court allowed appellants 2 days to file exceptions thereto, which it is claimed was in violation of a rule by which they were entitled to 10 days. Nevertheless, such exceptions were filed and overruled by the court in its order of July 12, 1937.

Upon motion of appellants, another order was entered by the court on July 13th, which among other things directed appellants within 20 days to file their respective answer as to any claim or interest they might have in the remaining $20,000 of the escrow fund. So far as the record discloses, no such answer has ever been filed. The orders of July 12th and July 13th are appealed from.

■■ The essential question presented by the appeal is whether the court had jurisdiction to disburse the controverted fund. It is the contention of appellants that neither they nor appellees were parties to the bankruptcy proceeding and that the controversy, therefore, is one between two third parties having no connection with the alleged bankrupt or its affairs. It is claimed they were in custody and control of the escrow fund as the agents of appellees, while appellees contend they were acting on behalf of the alleged bankrupt. While it may be said the record does not expressly so show, yet the circumstances are such that the latter contention must be accepted. The escrow provision was a part of the agreement between appellees and the alleged bankrupt. The bankrupt, under the agreement, was to employ Odell to conduct the litigation regarding the validity of the tax. For that purpose, under the agreement, he plainly was the agent of the bankrupt. Harris was vice president of the bankrupt, and the money in question was collected by

it and deposited in an account which was opened under their direction. It seems to us, even though it has been finally determined the bankrupt had no interest in the escrow fund, that the same was so closely connected with its affairs, in that it was controlled and in the custody of its officers and agents, that the court properly acquired jurisdiction of the fund. If we be wrong in this view, however, the agreed order of May 27, 1937, expressly conferred jurisdiction. Here all the parties, including appellants, were in court, and all agreed that court should assume jurisdiction of the controverted fund and make disbursement of the same. It would seem the court, at that time, might have been somewhat dubious of the situation as each party in interest, either personally or by attorney, was required to and did approve said order in writing.

■ It is insisted, however, by appellants, that jurisdiction cannot be conferred by consent. Many cases are cited in support of this contention, but we think they are distinguishable from the situation here. As was said in Page v. Arkansas Natural Gas Corporation, 8 Cir., 53 F.2d 27, on page 33:

" 'So far as concerns jurisdiction over property, the actual or constructive possession, after the filing of the bankruptcy petition, by the bankruptcy receiver, trustee, marshal, or referee, or by the bankrupt or his agents, or by someone not claiming beneficial interest (as, for example, custodians and court officers holding under nullified liens by legal proceedings, etc.) constitutes "custodia legis" for the purpose of "assumption of jurisdiction" by the bankruptcy court. And the bankruptcy court "assumes jurisdiction" over "property," and the property comes into its "custodia legis," if, after the filing of the bankruptcy petition, it is in the custody or control of the receiver in bankruptcy, or of the trustee, marshal, referee, bankrupt, bankrupt's agent, or of someone not claiming beneficial interest, such as custodians or court officers under nullified liens by legal proceedings.' In Murphy v. John Hofman Co., 211 U.S. 562, 568, 29 S.Ct. 154, 156, 53 L.Ed. 327, the court says: 'But, where the property in dispute is in the actual possession of the court of bankruptcy, there comes into play another principle, not peculiar to courts of bankruptcy, but applicable to all courts, Federal or state.' "

Every litigant, of course, is entitled to an opportunity to be heard upon the merits of a suit to which he may be a party or interested. Appellants do not state, but intimate, they have some interest in the funds in question. If so, they should have asserted such claim. It cannot be said they did not have an opportunity to do so. On one occasion the court expressly directed them to file an answer as to the merits, but this they refused or neglected to do. Even as to the $20,000 remaining in the fund, they were given permission to answer as to the merits, but instead they appeal on the alleged jurisdictional matter. Under such circumstances, they are in no position to here complain of the denial of a right which they could have availed themselves of had they so desired. What interest in this fund they might assert, we do not know, but we are convinced from an examination of the record they could have no interest or claim for services rendered in connection with the litigation in the matter of the sales tax, as the agreement between appellees and the alleged bankrupt explicitly provided that such services were to be paid for by the latter and without cost to appellees. While the record is confusing in some respects, we are satisfied the court had jurisdiction and that appellants had ample opportunity to assert any claim which they might have had to the fund in question.

The orders complained of are affirmed.