National Cash Register Company, Appellant, v. Cranston.

Argued October 10, 1928.

Before
PORTER, P. J., HENDERSON, TREXLER, KELLER, LINN,
GAWTHROP and CUNNINGHAM, JJ.

*Cecil P. Harvey,* and with him *Martin Feldman* and
*William Horenstein,* for appellant.—The statement of
the referee did not release the registers from the cus-
tody of the law: Nat'l Cash Register Co. v. Miller,
88 Pa. Superior Ct. 550; Pierce v. Scott, 4 W. S. 344;
Printograph Sales Company, 210 Fed. 567; In re:
Bishop, 153 Fed. 304; In re: Duble, 117 Fed. 794; In
re: Wetherill v. Gallagher, 217 Pa. 635; Watkins v.
Hughes, 206 Pa. 526 (1903). Property which is re-
leased from the custody of the law is free from dis-
traint until a reasonable time has elapsed: Stern v.

Stanton, 184 Pa. 468; Wright & Co. v. Giatras, 4 D. & C. 669; Snyder v. Boring, 4 Pa. Superior Ct. 196.

*Henry L. Schimpf, Jr.,* and with him *William A. Carr and Sidney L. Krauss,* for appellee, cited: Helvete v. Rapp, 7 Sergeant & Rawle 306; Furbush v. Chappell, 105 Pa. 187; Fleming v. Heitshu, 8 P. R. 715; Lengert Co. v. Belleview B. & L. Assn., 15 Superior Ct. 380.

OPINION BY GAWTHROP, J., December 13, 1928:

The plaintiff appeals from a judgment entered on a verdict directed for the intervening defendant in an action of replevin instituted to recover the possession of three cash registers. The undisputed material facts are: While the White Kitchen Caterers, Inc., was the tenant in possession of a store property in Philadelphia, the plaintiff delivered to it on or about April 2, 1923, on said premises, three cash registers under the terms of a bailment lease. On April 25, 1923, while the corporation was in possession of the cash registers, an involuntary petition in bankruptcy was filed by its creditors in the District Court of the United States for the Eastern District of Pennsylvania, and on the same day a receiver was appointed, who duly qualified, and took possession of the personal property in the possession of the corporation. On May 18, 1923, the corporation was adjudicated a bankrupt. In August, 1923, the plaintiff presented to the referee in bankruptcy a petition for the reclamation of the cash registers, claiming them under the terms of the bailment lease, which provided that upon the filing of a petition in bankruptcy by or against the White Kitchen Caterers, Inc., the unpaid balance of rent for the entire term should at once become due and payable, and authorized the plaintiff to "immediately take possession of" the cash registers. On September 13, 1923, the referee held a hearing in the reclamation

proceeding and stenographic notes of testimony were taken down by his clerk. When the hearing was concluded the referee made the following announcement: "I find the agreement dated April 2, 1922, signed by A. C. Revelli, Vice-President, and J. H. MacGregor, on behalf of the White Kitchen Caterers, Inc., was a valid bailment lease, and I also find that under the terms of this agreement there has been a default in the sum of $1,400. Therefore, I find that title to said three cash registers is in the National Cash Register Company. Decree to be prepared." In the afternoon of the same day, the intervening defendant, Mutual Trust Company, being the landlord then in possession of the leased premises, issued a landlord's warrant for the rent due April 1, 1923, and a levy was made by a constable on the three cash registers, which remained on the leased premises. On September 17, 1923, the referee made a formal decree in writing setting out that title to the three cash registers "is found to be in the said National Cash Register Company," and made the following note in his record of the case: "September 17, 1923, decree re Petition of National Cash Register Company made." On the following day, September 18, 1923, the plaintiff instituted this action of replevin against the receiver in bankruptcy and the cash registers were delivered into its possession by the sheriff under the writ. On September 16, 1923, the Mutual Trust Company filed its petition for permission to intervene as a party defendant. The permission was granted on November 9, 1923. The intervening defendant only filed an affidavit of defense. At the trial the presiding judge directed a verdict in favor of the intervening defendant, for the amount of the rent due for the premises on April 1, 1923, with interest, and the costs of the constable's levy, and refused plaintiff's point for binding instructions.

The first question which the appellant raises is

stated by its counsel as follows: "Does the referee's oral statement that he finds title to the goods to be in the claimant and that a formal decree will be prepared and entered of record, have the effect of releasing the goods from custodia legis so that bankrupt's landlord may thereafter, but before the preparation and entry of record of the decree, distrain for rent upon the goods in question?" The court below thought that our decision in National Cash Register Co. v. Miller, 88 Pa. Superior Ct. 550, required him to anwer the question in the affirmative. With that conclusion we are unable to agree. That case decided the point that when the referee made an order in writing directing the receivers to deliver the cash registers to the plaintiff, they passed out of the custody of the law and immediately became subject to a distress by the defendant for rent in arrears, so long as they remained on the demised premises. But the question of the effect of an oral pronouncement by the referee that he finds the title to the property sought to be reclaimed is in the claimant, is a very different one.

A referee in bankruptcy sits in a judicial capacity in all proceedings originally instituted before him, in the course of the proceedings after reference. When so acting he is regarded as a judicial officer clothed with the same powers and duties in bankrupt matters as the District Court: In re: Harrison, 197 Fed. 320; Brandenburg on Bankruptcy, Ed. 1917, p. 259, Sec. 309. He exercises much of the judicial authority of that court: White v. Schloerb, 178 U. S. 541; 44 L. Ed. 1183. But referees act through orders. They do not render "judgments" nor "decrees;" they enter "orders." Without the entry of an order, neither the judge nor the upper courts will review the decision of a referee: Remington on Bankruptcy, Ed. 1923, Vol. 2, Par. 680, and cases there cited. This view is supported by the terms of Rule No. XXVII of the Gen-

eral Orders in Bankruptcy adopted by the Supreme Court of the United States in 1898, which provides: "When a bankrupt, creditor, trustee, or other person shall desire a review by the judge of any order made by the referee, he shall file with the referee his petition therefor, setting out the error complained of and the referee shall forthwith certify to the judge the question presented, a summary of the evidence relating thereto, and the finding and order of the referee thereon." It seems quite clear that the finding announced by the referee on September 13, 1923, did not amount to an order which the adversary party or the receiver could have reviewed by the District Court. The oral pronouncement of the referee which concluded with the words "decree to be prepared," plainly indicates that he did not regard the finding then made to be a finality in any respect. But in any event it was not an order to the receiver to deliver the cash registers to the claimant; nor did the reduction of the finding to writing make it such an order. This action was brought against the receiver. There is no evidence that the cash registers ever passed out of his custody and control until the sheriff delivered them to the plaintiff under his writ. On the contrary the plaintiff averred in its statement of claim that the receiver continued in possession of them until the writ of replevin issued. How then can it be held that they had ever passed out of the custody of the law so that they could be replevied by the plaintiff or distrained by the intervening defendant? We understand that the reclamation petition which the plaintiff filed was in the usual form and contained a prayer that the receiver be required to deliver the property to the petitioner. No order to that effect was ever made. It is a rule without exception that a landlord cannot distrain goods which are in the custody of the law: Pierce v. Scott, 4 W. & S. 344. Property in the hands of a receiver is in the custody of the law; the receiver

is but the agent through which the court acts: National Cash Register Co. v. Miller, supra. It is equally familiar doctrine that after an adjudication in bankruptcy an action of replevin in a state court cannot be commenced and maintained to recover property in the possession of a receiver in bankruptcy at the time when the action of replevin is begun: White v. Schloerb, supra; Murphy v. John Hofman Co., 211 U. S. 562; 53 L. Ed. 327. It follows that neither the plaintiff nor the intervening defendant were in a position to maintain the proceedings instituted by them. This conclusion renders unnecessary the decision of the other questions raised.

The judgment for the intervening defendant is reversed and judgment is here entered for the defendant, Robert Cranston, receiver in bankruptcy for White Kitchen Caterers, Inc.