Pete KING, Appellant,

v.

**UNITED BENEFIT FIRE INSURANCE COMPANY, a corporation, Appellee.**

No. 8732.

United States Court of Appeals
Tenth Circuit.

May 12, 1967.

Rehearing Denied June 19, 1967.

Paul E. Garrison, Tulsa, Okl., for appellant.

Tom D. Capshaw, Oklahoma City, Okl. (Pierce, Mock, Duncan, Couch & Hendrickson, Oklahoma City, Okl., on the briefs), for appellee.

Before MURRAH, Chief Judge, HICKEY, Circuit Judge, and CHRISTENSEN, District Judge.

CHRISTENSEN, District Judge.

The principal problem involved in this diversity case is whether there was prejudicial error in the refusal of the lower court to grant trial by jury or whether the issues relating to the execution of a contract between the parties and any indemnity due thereunder were purely matters of law or of uncontroverted facts allowing summary disposition.

The appellant, Pete King, is a citizen of the State of Oklahoma. The appellee, United Benefit Fire Insurance Company, is a corporation licensed in the State of Nebraska to become surety on bail bonds in civil and criminal actions, with its principal place of business in that state. In July, 1960, appellant signed an Executing Agent's Contract appointing him executing agent of the appellee for the soliciting and writing of bail bonds in Oklahoma. He was thereupon issued powers of attorney by the appellee and during the period of August, 1960 to September, 1964, he did in fact write bail bonds wherein appellee was named as surety and which were paid by appellee in the event of forfeiture of bail by the courts.

On June 8, 1965, this action was commenced by the appellee insurance company. The complaint alleged, among other things, that "the defendant has been the agent of the plaintiff for the writing of bail bonds * * * pursuant to an agreement between plaintiff and defendant * * *", that "plaintiff has issued to defendant many powers of attorney to write bail bonds binding plaintiff", that "according to the terms of the * * * agreement, defendant is required to indemnify plaintiff for all loss incurred as a result of the execution of any bond written by defendant * * * (and) defendant re-

mains indebted to plaintiff in the amount of at least $22,675.26 on account of moneys paid by plaintiff due to the forfeiture of bonds written by the defendant * * *." The complaint prayed for a mandatory injunction restraining defendant from further use of certain bond powers of attorney still in his possession, an order prohibiting defendant from acting as an executing agent of plaintiff, an accounting, and a money judgment for forfeitures and costs paid by defendant. By way of answer to the complaint, defendant denied, among other things, plaintiff's allegations concerning his indebtedness to plaintiff, and alleged that the written agreement never became legally binding because its validity was conditioned upon plaintiff's approval which was never forthcoming.

Appellant made a timely written demand for trial by jury. Appellee subsequently filed an amendment to the complaint alleging that if the execution of the written agreement were insufficient, it was nonetheless binding upon both parties by ratification.

When the case came on for trial counsel for appellant moved for a continuance both by reason of the illness of his client and in reliance upon his demand for a jury, apparently unavailable at the time. The court denied the motion for a continuance, ruled that there was no jury question, particularly in view of the nature of the action as one for injunction or an accounting, and proceeded to try the case. At the conclusion of the evidence, the court entered judgment for the appellee for $22,646.06 and further ordered the appellant to surrender and deliver to the appellee certain unused powers of attorney. Only the money judgment is in question here.

■ We cannot say that the refusal to grant the continuance was an abuse of discretion. The motion for a continuance was not made until the morning of the trial, although an unsuccessful effort to notify the opposing party of the in-

tention to so move had been made the preceding day when the illness of the defendant first became known to his counsel. It did appear that the defendant had not notified his own counsel promptly of his illness, and the hard fact was that on the morning of trial the court and the plaintiff's out-of-town counsel and witnesses were present, prepared to go to trial without having been put on notice of the possibility of a continuance. Under such circumstances it would seem that the least the appellant should have done would have been to demonstrate by affidavit, or otherwise, that his testimony at the trial beyond his mere presence would be of such moment as to render denial of the continuance prejudicial to his defense. No such showing was made, nor was the nature of his prospective testimony indicated; and it was not shown that he would or could testify to any facts beyond, or different from, those covered by his deposition which was available for the purposes of the trial. At the close of plaintiff's case, when the defendant's counsel renewed the motion for a continuance so that "he might come into court and make his defense and explain a few of the items that need to be explained in this case", the parties stipulated at the suggestion of the court that all depositions, including that of the defendant, be placed in evidence. No further request was made for a continuance and defendant, as well as the plaintiff, then rested.

■ The denial of a jury trial on the stated ground that the action was one "for an accounting or injunction" was erroneous in view of Beacon Theatres, Inc. v. Westover, 359 U.S. 500, 79 S.Ct. 948, 3 L.Ed.2d 988 (1959), and Dairy Queen, Inc. v. Wood, 369 U.S. 469, 82 S. Ct. 894, 8 L.Ed.2d 44 (1962). See also AMF Tuboscope, Inc. v. Cunningham, 352 F.2d 150 (10th Cir. 1965). If there were material factual issues to be resolved a jury was demandable as of right despite the characterization of the action as one for an accounting or an injunction.[1]

---

1. Plaintiff virtually concedes this in its brief here where it is wryly observed that

"originally, this plaintiff was prepared to enthusiastically argue that as a matter

It is nonetheless contended here by appellee that the determinative facts were so far uncontroverted and the issues to be resolved at the trial were so essentially issues of law as to render the denial of a jury trial not erroneous, or at least not prejudicial.

■ Trial by jury is a vital and cherished right, rulings with respect to which are subject to exacting scrutiny on appeal. City of Morgantown, W. Va. v. Royal Ins. Co., 337 U.S. 254, 69 S.Ct. 1067, 93 L.Ed. 1347 (1949). See also Dairy Queen, Inc. v. Wood, and Beacon Theatres, Inc., v. Westover, supra.

Rule 39(a) F.R.Civ.P. provides that when trial by jury has been demanded the action shall be designated upon the docket as a jury action and the trial of all issues so demanded shall be by jury in the absence of stipulation or unless "the court upon motion or of its own initiative finds that a right of trial by jury of some or all of those issues does not exist under the Constitution or statutes of the United States."

■ It is firmly established that the granting of a motion for summary judgment or directed verdict in an appropriate case does not infringe upon the right to trial by jury. Here, however, no motion for summary judgment had been filed and the case proceeded as one on trial to the court only. It does not appear that a pre-trial conference, usually an opportune time to consider the propriety of a jury demand, had been held. There appeared at the outset factual issues concerning the execution or ratification of the written contract and a dispute concerning the amount of the indemnity to which appellee might be entitled. The depositions or other proof

had not then been offered and it was uncertain what other witnesses might be called by plaintiff or whether the plaintiff himself had additional information affecting these issues.

■■ Irrespective of what might be surmised by the court concerning the insufficiency of available proof, we could not approve a practice of proceeding to trial absent a jury in a case in which a jury has been demanded as of apparent right on the pleadings without some record assurance by summary judgment or other pre-trial procedures that there are no jury questions to be resolved. However, a jury was denied here upon the inadvertent impression that in such an "accounting" or "injunction" suit it was not demandable as of right. Under these circumstances it seems appropriate to inquire whether in view of developments of the trial the denial of a jury was in any way prejudicial. If on the evidence submitted there were only questions of law to be resolved, or if on the factual issues raised by the pleadings a jury verdict in favor of appellant would have to be set aside because of lack of substantial foundational evidence, any error in refusing a jury trial would constitute harmless error not justifying retrial. F.R.Civ.P. 61, 39 (a) (2); Freeman Contractors, Inc. v. Central Surety & Ins. Corp., 205 F.2d 607 (8th Cir. 1953); Leimer v. Woods, 196 F.2d 828 (8th Cir. 1952); Forster v. Insurance Co. of North America, 139 F.2d 875 (2nd Cir. 1944). Cf. Whitsell v. Alexander, 229 F.2d 47 (7th Cir. 1956). See also 3 Barron and Holtzoff, Federal Practice & Procedure (Wright Edition) § 1354.1, pp. 451–453.[2] But see Jackson v. General Finance Corp., 208 Okl. 44, 253 P.2d 166 (1953) and dissenting opin-

of law defendant was not entitled to a jury trial because this is a matter of equitable cognizance * * * (but *Dairy Queen* and *Beacon Theatres*) somewhat reduced plaintiff's enthusiasm for this argument."

2. "* * * But the mandate of Rule 61 applies even here, and the error must be disregarded unless the losing party has been prejudiced by it. * * * The Sev-

enth Amendment guarantees the right of jury trial to litigants in the Federal Courts. In view of the constitutional guaranty, and the mandatory language of Rule 39, appellate courts will not affirm a wrongful denial of a jury trial unless convinced in the record that the trial judge's conclusion as to the sufficiency of the evidence to take the case to the jury was not the result of a resolution of conflicting testimony."

ion of Mr. Justice Black in City of Morgantown, W. Va. v. Royal Ins. Co., 337 U.S. 254, 69 S.Ct. 1067, 93 L.Ed. 1347 (1949), supra, at 1072 of 69 S.Ct.

The evidence upon which appellee relies in support of his claim for indemnity for losses incurred as a result of the execution of bonds written by the appellant consisted of portions of the appellant's deposition which was read into the record, the testimony of L. S. Cornett, a general agent of the appellee at the time the appellant allegedly became a bondsman for the company, and the testimony of W. R. Davis, who at the time of trial was employed as bond division manager of the appellee. The appellant's case, on the other hand, consisted of the depositions of A. J. Bianchi, vice president of the appellee in charge of bonds, L. S. Cornett, and the appellant.

▇▇▇ We have carefully reviewed the record including the testimony of the above witnesses and have concluded that the evidence establishes as a matter of law the binding execution of the agent's

contract.[3] It is undisputed that the contract was signed by the appellant and by Cornett; and the record further establishes that the contract was then approved by Y. A. Decker [4] on behalf of the appellee, and that copies of the approved contract were then returned to the signatory parties.[5] Even if one were to conclude otherwise i. e., that a binding execution is not clearly established by the evidence, it is beyond doubt that the agreement was ratified and acted upon by the respective parties [6] and in that manner became binding. See J. P. C. Petroleum Corp. v. Vulcan Steel Tank Corp., 118 F.2d 713 (10th Cir. 1941).

▇▇▇ Applying the binding effect of the contract as a matter of law, the meaning of the contract with reference to the obligation of the appellant to indemnify the appellee *against any and all liability or loss incurred as result of the execution of any bond written by the appellant* also was a matter of law properly resolved by the court.[7]

3. At page 59 of the record, counsel for the appellant in his cross-examination of Cornett asks "Isn't it true that it is to be approved by one of the officials who would be either the president or a vice president or the secretary and then attested to by the assistant secretary?" Other than this suggestion by counsel, the record raises no substantial issue as to whether the contract was properly executed.

4. Bianchi testified that Decker joined United Benefit at the time he became associated with the company as vice president in charge of bonds. He said it is "possible" that Y. A. Decker was Assistant Secretary in 1960. At another point he testified that Decker was "authorized" to sign; later that Decker "apparently" signed for United Benefit Fire.

5. Cornett, speaking of the contract, said that he "sent it to the office of the United Benefit Fire Insurance Company in Chicago, and it was returned to my office signed by one of the Assistant Secretaries of the company, approved by them." He also testified that "she (Decker) usually approved them" and that "she was an officer of the company and we were so informed." King tsetified that he could have received a copy of the approved con-

tract but that if he did he could not find it.

6. The appellee issued its powers of attorney to the appellant and they paid or settled forfeitures on bonds written by the appellant. Appellant wrote numerous bail bonds using the appellee's powers of attorney and he submitted regular reports of his activities to the general agent of the appellee. In addition, he forwarded substantial sums of money to be credited to his "buildup fund" which fund acted as a surety against any possible loss to the company, and he executed a note and mortgage payable to the appellee as further security for bond forfeitures.

7. Paragraph 8 of the Executing Agent's Contract reads: "The Executing Agent will indemnify the Company and the Manager and save them and each of them harmless from any and all liability, loss, costs, damages, claims, suits, attorneys' fees and expenses of whatever kind or nature which either may be sustained or incurred as a result of or in connection with the execution of any bond heretofore or hereafter written by or through the Executing Agent, or which they, or either of them, may sustain or incur in making any investigation on account of any such bonds, in defending or prosecuting any ac-

In arriving at the amount of money damages, the district court subtracted the amount held by the appellee in the appellant's "buildup fund" from the total amount the appellee had paid on bond forfeitures allegedly executed by the appellant. The appellant's deposition, received in evidence, makes clear that he questioned his liability with respect to only five of those forfeitures.[8] In four of those five instances, appellant admitted that he had written the bond and that a forfeiture had occurred, but he erroneously suggested that the forfeitures were not binding on him because of some lack of notice from appellee[9] or that by reason of equitable considerations he could obtain or was in the process of obtaining remissions. The one instance where the forfeiture was denied involved such an indefinite and unassertive denial on the one hand,[10] and such positive evidence on the other, including the check of the appellee in payment of the forfeiture order, as to raise no substantial issue of fact.

There thus remained in colorable uncertainty only the question of what effect, if any, a judgment would have should the appellee subsequently obtain remissions of amounts already paid on forfeitures. The court's entry of a money judgment based on the contract, while properly for the amount paid on the forfeitures, made no express provision for the reduction of the judgment or of appellant's liability in the event that any amounts were returned to the appellee by reason of future remissions. This is the only possible prejudice in the judgment that we can see. Whether any such remission would be obtained was not susceptible of proof at the trial but depended upon subsequent action by other courts over which neither the court below nor the parties possessed any control. And as a matter of law any remissions of forfeitures covered by appellee's judgment would no doubt be in trust for the benefit of the appellant either as credit against the judgment or, if theretofore paid, for payment to the appellant.

As so understood, the judgment of the trial court is affirmed.

---

tion, suit or other proceeding which may be brought in connection herewith, in obtaining or attempting to obtain a release from liability under any such bond, or in locating, extraditing or surrendering the person bailed. * * *"

8. Referred to in the record as exhibits 6, 12, 14, 17 and 18.

9. With regard to forfeitures referred to as exhibits 17 and 18, appellant contended that had the appellee given him notice of a default on the bond he could have "worked it out". In response, we would point out that paragraph 16 of the contract requires that the "executing agent will send immediate notice to the Company and/or the Manager of any forfeiture declared on any bonds written by him", but that it is silent as to any reciprocal duty on the part of the Company.

10. Record, p. 128: Q. Did you have any sort of forfeiture on James P. Jackson? A. I don't know on that one now. You might refresh my memory on that.