In the Matter of Jan Wiktor
KAKOLEWSKI, Debtor.

Arthur B. FEDERMAN, Trustee,
Plaintiff,

v.

William Ray STRICKLIN et
al., Defendants.

Bankruptcy No. 82–02611–SW.
Adv. No. 83–0250–SW.

United States Bankruptcy Court,
W.D. Missouri,
Southwestern Division.

April 21, 1983.

573

Arthur B. Federman, Kansas City, Mo., for plaintiffs.

FINAL JUDGMENT DIRECTING EACH OF THE ABOVE DEFENDANTS FORTHWITH, WITH REASONABLE DISPATCH, AND WITHIN 30 DAYS (OR SUCH ADDITIONAL TIME AS THE COURT MAY, FOR GOOD CAUSE TIMELY SHOWN IN WRITING, GRANT) TO TURN OVER TO PLAINTIFF THE SUM ABOVE OPPOSITE HIS OR HER NAME

DENNIS J. STEWART, Bankruptcy Judge.

These are actions instituted by the plaintiff trustee in bankruptcy to compel the turnover to him, pursuant to section 542(b) of the Bankruptcy Code, of amounts due the debtor which are, within the meaning of that section, "matured, payable on demand, or payable on order." Process has been issued to each of the defendants, setting forth a time to answer or otherwise to respond to the plaintiff's complaint.[1] But the above and foregoing respondents have neither answered nor otherwise responded. Default judgment is therefore warranted under the provisions of Rule 755(a) of the Rules of Bankruptcy Procedure.[2]

None of the above defendants has raised any objection to the jurisdiction of the court of bankruptcy in the manner required by Rule 915(a) of the Rules of Bankruptcy Procedure, "by timely motion or answer." Therefore, each of them must be regarded as having consented to the subject matter jurisdiction of the bankruptcy court. As this court has noted on prior occasion, such consent, under traditional bankruptcy authority, bestows subject-matter jurisdiction on the bankruptcy court when such subject-matter jurisdiction would not otherwise exist. *Matter of Brown,* 26 B.R. 119 (Bkrtcy.W.D.Mo.1983).

Further, it is not true, as has sometimes been suggested, that the striking of section 1471, Title 28, United States Code, by the United States Supreme Court pursuant to its decision in *Northern Pipeline Constr. Co. v. Marathon Pipe Line Co.,* —— U.S. ——, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982), means that the bankruptcy court is without jurisdiction of an action such as that at bar. According to the unambiguous letter of section 542(b), a matured account or an indebtedness payable on demand is property which is within the summary turnover power of a bankruptcy court. It follows from the standard definitions of summary jurisdiction that such matured accounts and indebtednesses are in the constructive possession of the bankruptcy court as of the date of inception of title 11 proceedings. "Upon the filing of a petition in bankruptcy, all the property of the alleged bankrupt passes at once into the custody of the court of bankruptcy, and becomes subject to its summary jurisdiction to obtain actual possession, if that is necessary." 2 Collier on Bankruptcy para. 23.05(2), p. 474.2 (1976). This view is corroborated by the legislative history of section 541 of the Bankruptcy Code, the statute which defines the bankruptcy estate, and which explicitly

---

1. Process was served upon the defendants, and each of them, by means of an order to show cause. "(A)n order to show cause (is) in the nature of process." 2 Collier on Bankruptcy para. 24.39, p. 796 (1976). In actions in which the bankruptcy court has the duty initially to determine its own jurisdiction, it is said that the bankruptcy court may initiate the proceedings by "cit(ing) the (potential) claimant to show cause." *Id.,* sec. 23.07, p. 524.

2. That rule, as here applicable, pertinently provides that "(w)hen a judgment is sought against a party in adversary proceedings and such party has, without sufficient excuse, ... failed to plead or otherwise defend ... the court upon request therefor shall enter a judgment by default."

states that that section is intended to include within the bankruptcy estate "property recovered by the trustee under section 542 ..., if the property was merely out of the possession of the debtor, yet remained 'property of the debtor.'" H.R. No. 95–595, 95th Cong., 1st Sess. (1977), 367–8; S.R. No. 95–989, 95th Cong., 2d Sess. (1978) 82–3, U.S.Code Cong. & Admin.News, pp. 5787, 6323. The traditional summary jurisdiction of a bankruptcy court may be exercised despite the absence of any bankruptcy court jurisdictional statute. As this court has previously explained in *Matter of Brown,* 26 B.R. 119, 9 B.C.D. 1276 (Bkrtcy.W.D.Mo. 1983), and *Matter of Isis Foods, Inc.,* 26 B.R. 122 (Bkrtcy.W.D.Mo.1983), matters concerning the administration and distribution of a bankruptcy estate are within the inherent, nonstatutory jurisdiction of the bankruptcy court.[3]

■ It must next be considered whether the bankruptcy court's exercise of power under section 542(b) offends the rule of *Northern Pipeline Constr. Co. v. Marathon Pipe Line Co., supra,* to the effect that non-Article-III bankruptcy judges may not preside over actions which arise under state law or nonbankruptcy federal law. By virtue of section 542(b), *supra,* an action such as that at bar is made to arise under bankruptcy law. And this is so even though actions on account and debt and contract generally arise under state law, for the provisions of section 542(b) are sufficient to arrogate the general law concepts and transform them into bankruptcy law.[4] But to what extent may it be said that the Congress may by simple fiat transform general law actions into actions arising under bankruptcy law? If it were possible for Congress to transform all types of actions into actions arising under bankruptcy law, then it would appear that the current turmoil on the issue of bankruptcy court jurisdiction might be ended simply by legislating all forms of action now arising under nonbankruptcy law to arise under bankruptcy

---

**3.** "(A) matter integral to the administration and distribution of the bankruptcy estate ... has ordinarily been held (to be within) inherent (bankruptcy court) jurisdiction, not dependent on statute. 'Property in the custody of a court of equity for administration is always held in trust for those to whom it rightfully belongs. The jurisdiction to inquire and determine who the lawful owners of it are and to that end to call before it all claimants by a reasonable notice or order to present their claims to the court within a reasonable time, or to be barred of any right or interest in the property or in its custody, or in its proceeds, is a power inherent in every court of equity, incidental and indispensable to the authority to administer the property in its possession and to distribute its proceeds.' *In re Rochford,* 124 F. 182, 187 (8th Cir.1903); 2 Collier on Bankruptcy para. 23.08, p. 444, n. 6 (1976) (Emphasis added.) The court of bankruptcy, which is still explicitly confided all the power to issue all process, orders and judgment 'necessary or appropriate to carry out the provisions of this title,' section 105(a) of the Bankruptcy Code, has virtually from its inception been considered to be invested with this 'inherent' jurisdiction which is not dependent for its existence upon any statute..... Accordingly ..., 'Where a court of competent jurisdiction has taken property into its possession, through its officers, the property is thereby withdrawn from the jurisdiction of all other courts. The court, having possession of the property, has an ancillary jurisdiction to hear and determine all questions respecting the title, possession, or control of the property. In the courts of the United States, *this ancillary jurisdiction may be exercised though it is not authorized by any statute.* The jurisdiction in such cases arises out of the possession of the property, and is exclusive of the jurisdiction of all other courts, although otherwise the controversy would be cognizable in them.' *Murphy v. John Hofman Co.,* 211 U.S. 562, 570, 29 S.Ct. 154, 157, 53 L.Ed. 327 (1909) (Emphasis added.)." *Matter of Isis Foods, Inc.,* 26 B.R. 122, 123 (Bkrtcy.W.D.Mo.1983), holding suits for recovery of preferences under section 547 of the Bankruptcy Code to be within the inherent, nonstatutory jurisdiction of the bankruptcy court.

**4.** An example of the incorporation of state law concepts into federal bankruptcy law may be found in the grounds for nondischargeability of debts. Although the concepts which provide such grounds are derived from state law, they are made over into federal bankruptcy law as grounds for nondischargeability. Thus, it is said that the rule of decision in nondischargeability cases is not state law, but rather federal bankruptcy law. More particularly, it is said that, while concepts of state law may define the relationships between the parties, those of federal bankruptcy law provide the basis for decision. See *Matter of Evans,* 2 B.R. 85, 90 (Bkrtcy.W.D.Mo.1979).

law when arising in or related to a bankruptcy case.

■ In the examples of instances in which such a transformation has previously been accomplished, in the field of nondischargeability statutes and other statutes,[5] it can be seen that the Congress has with some regularity, and without apparent offense to the Constitution, transformed actions which arise under state law to those which arise under bankruptcy law. The one seeming limitation, struck upon by commentary and case decisions and reiterated in the *Marathon* decision, *supra,* is that the constitutional right to a jury trial may not be abridged.[6] This limitation is of crucial importance in the current bankruptcy court, which is without any power to conduct a jury trial.[7] And it is applicable in the types of action now before the court, for it is well

established that, in actions sounding in account and contract, there is a right to jury trial under the Seventh Amendment to the Constitution.[8]

■ But, in any type of action, before the right to a jury trial can be said to arise, there must be an issue of fact to be tried by the jury.[9] In respect of accounts and contract rights, if they are, in the parlance of section 542(b), really "matured" and "due," it seems that the only likely issue of fact to be raised would be that of full or partial payment or other claim of setoff which must be affirmatively pleaded and proved.[10] In the actions at bar, in which the judgments are being rendered against defendants who have neither answered nor otherwise responded, no such affirmative defenses have been raised and there is therefore

---

5.  See note 4, *supra.*

6.  In *Katchen v. Landy,* 382 U.S. 323, 336, 337, 86 S.Ct. 467, 476, 476, 15 L.Ed.2d 391 (1966), the Supreme Court of the United States held that, even in cases in which a litigant would be entitled to a jury trial outside the context of bankruptcy, "when the same issue arises as part of the process of allowance and disallowance of claims, it is triable in equity." See also *Barton v. Barbour,* 104 U.S. 126, 133, 134, 26 L.Ed. 672, to the effect that "in cases of bankruptcy, many incidental questions arise in the course of administering the bankrupt estate, which would ordinarily be pure cases at law, and in respect of their facts triable by jury, but, as belonging to the bankruptcy proceedings, they become cases over which the bankruptcy court, which acts as a court of equity, exercises exclusive control." But it does not appear that the legislature may, in wholesale fashion, convert what formerly were state law actions involving a constitutional right to jury trial into equity actions in bankruptcy. Although *Katchen v. Landy, supra,* and *Barton v. Barbour, supra,* might seem to make such possible, the strict view on the subject would dictate otherwise. See 1 Collier on Bankruptcy para. 3.01, pp. 3–95, 3–96 (1982). See also *Northern Pipeline Constr. Co. v. Marathon Pipe Line Co.,* —— U.S. ——, 102 S.Ct. 2858, 2859, 2860, 73 L.Ed.2d 598 (1982).

7.  If not otherwise, the limitation is imposed by the model emergency rule for bankruptcy administration.

8.  "(W)hen a federal statute embraces a common-law form of action, that action does not lose its identity merely because it finds itself enmeshed in a statute. The right of trial by jury in an action for debt still prevails whatever modern name may be applied to the action." *United States v. Jepson,* 90 F.Supp. 983, 986 (D.N.J.1950).
"It is . . . clear that merely because portions of plaintiff's prayer seek an 'accounting' the right to trial by jury is not lost. Only when the accounts involved are of such a complicated nature that only a court of equity can unravel them is the right lost; such circumstances will only rarely arise." *McMahon v. Prentice-Hall, Inc.,* 486 F.Supp. 1296, 1299 (E.D.Mo.1980).
"The effect of (the Seventh Amendment) is to declare that the right of trial by jury shall depend neither on legislative nor judicial discretion. In the absence of this provision, this right might be impaired (1) by the organization of courts in such a manner as not to secure it to suitors; (2) by authorizing courts to exercise, or by their assumption of, equity or admiralty jurisdiction over cases at law. This provision of the constitution, however, preserves the right of jury trial against any infringement by any department of the government and . . . prohibits all courts of the United States from sustaining suits in equity where the remedy is complete at law." *Smith v. American Nat. Bank,* 89 F. 832, 838 (8th Cir.1808).

9.  *"If there were material factual issues to be resolved* a jury was demandable as of right despite the characterization of the action as one for an accounting or an injunction." *King v. United Benefit Fire Insurance Company,* 377 F.2d 728, 730 (10th Cir.1967) (Emphasis added.).

10.  See Rule 8(c), F.R.Civ.P.

no issue of fact which can constitutionally command a jury trial.

And generally, when actions have been determinable as a matter of clear contract right, even under the more restrictive brand of law which governed inherent jurisdiction under the former Bankruptcy Act,[11] one line of authority held summary bankruptcy court jurisdiction to be appropriately exercised.[12] These authorities must now be considered to be more firmly established under the current Bankruptcy Code, which expressly provides for summary turnover power which can now be exercised as a matter of inherent equity jurisdiction over the estate without the many restrictive trammels of the former law.[13]

■ It seems true, of course, that, when a demand for jury trial is added to a timely factual defense, the bankruptcy court must yield to the constitutional right to a jury trial and give the case over to a court of general jurisdiction. An exception to this rule should exist when the matter would be triable as an action in equity, without the right to a jury trial, as when it is an action for an accounting by a corporate officer or other fiduciary, or an action on a long and complicated account, or an action in which the legal remedy is less adequate than the equitable one.[14]

■ And otherwise, it would seem that the bankruptcy court may conduct a hearing if and when the defense is timely raised upon a demand for jury trial to determine whether there is a material factual issue warranting a jury trial—whether, in the terminology formerly developed, the defense is real and substantial or merely colorable.[15] In most imaginable instances,

11. See, e.g., *Ford v. Magee,* 160 F.2d 457, 460 (2d Cir.1947), to the effect that "it is almost a mistake to seek a conclusion of situations of this sort by the short cut of a summary proceeding ... We cannot too insistently urge upon trustees not to proceed in this way; we cannot too seriously impress upon referees the duty of discouraging in every way possible those trustees who do so proceed. An especially effective sanction would be to announce in advance, except in the plainest cases, that if the trustee should fail, neither he nor his attorney will be granted an allowance for their services in the summary proceeding. We shall treat this as warning in advance that in the future we shall feel free upon appeals to deny any such allowance, even though the referee may have granted one."

12. See, e.g., *Morrison v. Rocco Ferrera & Co.,* 409 F.Supp. 1364, 1368 (E.D.Mich.1975), affirmed, 554 F.2d 290 (6th Cir.1977), in which a suit was brought in the bankruptcy court under the former Bankruptcy Act on an account receivable allegedly owed to the debtor (or bankrupt). The district court in that case explicitly held that "(i)f a chose in action is within the estate of the bankrupt, Section 2(a)(7) does not limit the bankruptcy court to determining controversies *but also empowers the court to collect the debt.*" (Emphasis added.). The appellate court affirmed, holding that the action on an account receivable would have been within the summary jurisdiction of the district court in a reorganization proceeding and therefore was also within the summary jurisdiction of the bankruptcy referee on a general reference to him. See also *In re Lehigh Valley Railroad Company,* 458 F.2d 1041 (3d Cir.1972), to the

effect that "a reorganization or a bankruptcy court acquires jurisdiction of all property in the actual or 'constructive' possession of the debtor or the bankrupt. It is only when a chattel is withheld by its actual possessor under a substantial claim of right or when an obligation is disputed by the alleged obligor that the trustees must resort to a plenary action." *Id.* at 1043–1044.

13. See, e.g., note 11, *supra.*

14. "Equitable jurisdiction for an accounting is usually put upon the following grounds: (1) the existence of a fiduciary relationship with a duty resting upon the defendant to render an account; (2) the existence of mutual accounts, or if the account is all on one side, the fact that the account is complicated; and (3) the need for a discovery. A court may also assume jurisdiction where other grounds for invoking equity ... are present." 1 Am.Jur.2d *Accounts and Accounting* section 50, p. 423 (1962).

15. "In all cases where the summary power of the bankruptcy court is disputed, a preliminary inquiry is necessary to ascertain whether or not the requisites for summary jurisdiction ... are present, and so to determine whether or not the court may proceed further .... A necessary corollary to these principles is that in all proceedings to recover summarily the possession of property from the hands of third persons, 'there is preliminary jurisdiction to inquire into the nature of the defendants' possession and into any adverse claim so far as to see whether it is more than colorable.' In other words, it

then, it seems that the trustee in bankruptcy can collect the accounts and contract rights due the bankruptcy estate without the impediments which hindered his attempts under the former law. Thus, he may bring the action in his local bankruptcy court, taking advantage of the nationwide service of process which is afforded by the rules of bankruptcy procedure, and may bring the matter to a hearing to determine whether there is any potential merit to any defense. In this manner, the trustee, it seems, may readily collect most of the obligations owed the debtor by third parties and, as to the rest, may have a preview of the defenses to enable him to weigh the merits and demerits of bringing the action in a nonbankruptcy forum. And finally, even if the trustee must ultimately bring the suit in the nonbankruptcy forum, he may seemingly enforce any judgment there obtained, if it is on a matured account or demand obligation, within the meaning of section 542(b), *supra,* as enforcement of a

turnover order, i.e., by civil coercive contempt,[16] thus pretermitting the expense of returning to the nonbankruptcy forum to enforce the award.

The same principle applies in the actions at bar which appear to involve the issuance of a turnover order in the purest and simplest form predicated by the statute. Therefore, collection of the turnover orders may be enforced by citations sounding in civil contempt.[17]

Nor can it be said that the inherent nonstatutory equity jurisdiction which forms the basis for this judgment is displaced by the exclusive jurisdiction of the district court under section 1334, Title 28, United States Code, as one court has held.[18] The jurisdiction granted to the district courts by section 1334, *supra,* has from its inception been conceived of as supplemental to the inherent jurisdiction of the bankruptcy court rather than exclusive of it.[19] When

becomes necessary for the court to determine as to the substantiality of the adverse claim, if any, prior to assuming summary jurisdiction of the property and for this reason the court may make its inquiry into the basis of the claim. The mere assertion of an adverse claim is not enough to prevent the exercise of summary jurisdiction by the bankruptcy court; but in all cases the claimant is entitled to be heard." 2 Collier on Bankruptcy para. 23.07, pp. 520, 522, 523 (1976).

**16.** The judgment issued by the nonbankruptcy forum would establish the character of the obligation as a "debt that is property of the estate and that is matured, payable on demand, or payable on order" within the meaning of section 542(b). Therefore, a turnover proceeding in the bankruptcy court would be available to enforce the obligation. And the turnover order, in turn, could be enforced by civil coercive contempt proceedings. *Maggio v. Zeitz,* 333 U.S. 56, 67, 68 S.Ct. 401, 407, 92 L.Ed. 476 (1948); 2 Collier on Bankruptcy para. 23.10, p. 586.1 (1976).

**17.** See note 16, *supra.*

**18.** See *In re Matlock Trailer Corp.,* 27 B.R. 318 (M.D.Tenn.1983).

**19.** The district court's jurisdiction under section 1334, Title 28, United States Code, was deemed to be exclusive of state court jurisdiction. But it was not exclusive of bankruptcy court jurisdiction; rather, it was regarded as

supplemental to it and was used when the district court wished to withdraw reference of a case to the bankruptcy court, or when there were no referees in bankruptcy currently in office or present, or similar situations. But, otherwise, the bankruptcy court, as the court having custody of the estate, was deemed to have jurisdiction. See, e.g., *Berman v. National Acceptance Company of America,* 239 F.Supp. 767, 774 (W.D.Tex.1965), in which it is observed that "(t)he problem ... is essentially a question of the propriety of a United States District Court exercising jurisdiction over a claim asserted against the bankrupt estate after bankruptcy proceedings have begun and before they have terminated therein. In an early case, the Supreme Court made it clear that the jurisdiction of the bankruptcy court in all proceedings in bankruptcy was intended by Congress to be exclusive of all other courts. *United States Fid. & Guar. Co. v. Bray,* 225 U.S. 205, 32 S.Ct. 620, 56 L.Ed. 1055 (1912)." In the decision thus cited, the Supreme Court held that it was improper for other federal courts to conduct plenary proceedings which might interfere with administration and distribution of the estate. "(T)he jurisdiction of the bankruptcy courts ... is intended to be exclusive of all other courts ... (in), among others, all matters of administration, such as the allowance, rejection, and reconsideration of claims, the reduction of the estates to money, and its distribution, the determination of the preferences and priorities to be accorded to claims presented for allowance and payment in regular course,

section 1334, moreover, is to be effective only until April 1, 1984, it seems imprudent to say that its provisions imply an ouster of bankruptcy court jurisdiction.[20]

Other recent court rulings would imply that *any* exercise of bankruptcy jurisdiction is an exercise of federal judicial power and therefore can be carried out only by an Article III court. See, e.g., *In re Motion to Dismiss: Constitutionality of Juris., 23 B.R. 334, 342 (Bkrtcy.N.D.Ga.1982), to the following effect:

> "(I)n spite of considerable obfuscation, the principles enunciated by the Supreme Court (in *Marathon*) are precise. Bankruptcy Judges who are not afforded the protection of Article III are constitutionally prohibited from adjudicating rights involving the liability of one individual to another as defined under the law. Adjudication of the rights of individuals in property or individual claims to property in bankruptcy proceedings certainly often, if not always, involves determination of the liability of one party to another. Consequently, granting the non-Article III Bankruptcy Court actual or constructive possession of the property does not resolve a constitutional prohibition."

Whether a determination of whether certain property or money is an asset of the bankruptcy estate constitutes a determination of "private rights" within the meaning of the *Marathon* decision is debatable. And, at least for the time being, the Court in *Marathon* has determined not to decide that issue. See 102 S.Ct. at 2871 to the following effect:

"Appellants argue that a discharge in bankruptcy is indeed a 'public right,' similar to such congressionally created benefits as 'radio station licenses, pilot licenses, and certificates for common carriers' granted by administrative agencies ... But the restructuring of debtor-creditor relations, which is at the core of the federal bankruptcy power, must be distinguished from the adjudication of state-created private rights, such as the right to recover contract damages that is at issue in this case. The former may well be a 'public right,' but the latter obviously is not. Appellant Northern's right to recover contract damages to augment its estate is 'one of private right, that is, of the liability of one individual to another under the law as defined.' *Crowell v. Benson*, 285 U.S., at 51, 52 S.Ct. at 292."

In answering this question, it may well be, in the end discovered that the concepts which surround the gathering of a bankruptcy estate through the exercise of inherent, nonstatutory jurisdiction are all directed toward *not* determining the individual rights of any parties.[21] Thus, if any rights of any individual parties are raised, under the concepts which surround this form of jurisdiction, the bankruptcy court, as noted above, surrenders jurisdiction. And, further, parties may consent, either impliedly or expressly, to have their rights adjudicated by a non-Article III court, and, in wielding its inherent jurisdiction according to the foregoing principles, the bankruptcy court ordinarily adjudicates only with respect to parties whose actions have placed them so that they may ordinarily be deemed impliedly to consent to bankruptcy court jurisdiction.[22]

and the supervision and control of the trustees and others who are employed to assist them." 225 U.S. at 217, 32 S.Ct. at 625.

**20.** Thus, if Congress fails to act on the jurisdictional issue by April 1, 1984, reliance on section 1334 to the exclusion of bankruptcy court jurisdiction will produce a situation where no court has jurisdiction. But reliance on the principles of the inherent jurisdiction of a court having custody of the estate will allow bankruptcy jurisdiction to continue.

**21.** The reason for the concepts of summary jurisdiction relating to "adverse claimants" is

to ensure against the exercise of that jurisdiction to adjudicate any substantial adverse claims of third parties.

**22.** Nearly all the parties with whom a bankruptcy court deals in its proper exercise of jurisdiction to administer and distribute an estate are those who could be deemed to have impliedly consented to bankruptcy court jurisdiction. These include the debtor and the debtor's spouse, the officers and directors of a corporate debtor, transferees who accepted transfers without consideration or with knowledge of the impending bankruptcy, claimants, appli-

This court certainly finds no fault with those who desire to have the bankruptcy court elevated to Article III status. Many recent events tend to demonstrate that the bankruptcy judges merit the protections which Article III status can bring them. But it seems to defy reason and experience to conclude that, after an epoch of great achievement as a non-Article III court, the bankruptcy court must either be elevated to Article III status or else erased forever from existence. For it seems from the foregoing that, by virtue of its time-honored inherent jurisdiction, the bankruptcy court presently has virtually all, if not all,[23] the jurisdiction for it to carry out the essential functions which make it a court of sufficiently vital importance to warrant its continued existence. Even if the bankruptcy court becomes an Article III court, the jurisdiction which is inherently bankruptcy court jurisdiction should remain distinct from other jurisdiction of an Article III court, for time and experience have taught that the blending of the two jurisdictions—bankruptcy and nonbankruptcy—can have a deleterious effect on the bankruptcy docket and hence upon the bankruptcy practice.

For the foregoing reasons, it is concluded that the bankruptcy court has jurisdiction to issue a turnover order such as is requested in the actions now at bar. "It is the duty of the bankruptcy court to examine into its own jurisdiction, and upon review of a referee's order into his jurisdiction also, whether or not the question is raised." 1 Collier on Bankruptcy para. 2.05, p. 150, n. 1 (1978). Having done so, the court may now issue the requested orders.

It is therefore

ORDERED AND ADJUDGED that each of the above defendants forthwith, with reasonable dispatch, and within 30 days (or such additional time as the court may, for good cause timely shown in writing, grant) turn over to plaintiff the sum above opposite his or her name.

---

cants for fees and the like, and, as here, those who hold property of the estate. It seems that it would be possible to firm up the inherent jurisdiction of the bankruptcy courts without offending the *Marathon* rule through implied consent statutes which defined the acts which constituted consent to bankruptcy court jurisdiction.

**23.** See and compare *Matter of Brown*, 26 B.R. 119 (Bkrtcy.W.D.Mo.1983); *Matter of Isis Foods, Inc.*, 26 B.R. 122 (Bkrtcy.W.D.Mo.1983), respectively holding that actions involving the discharge, dischargeability and nondischargeability of debts and preferences are within the inherent jurisdiction of a bankruptcy court. It seems that the same principles would apply to fraudulent conveyances, with respect to which a constitutional right to a jury trial has been held to be not applicable. *Senchal v. Carroll*, 394 F.2d 797, 799 (10th Cir.1968); *Damsky v. Zavatt*, 289 F.2d 46, 53 (2d Cir.1961). And when, in addition to these principles and those otherwise set out in the text of this memorandum, consent jurisdiction may still be applicable, the bankruptcy court may conceivably be able to exercise, as a matter of inherent jurisdiction, virtually all the power formerly exercisable under the modern Code. The cases which are omitted from such inherent jurisdiction would seem in many, if not most, cases to be sufficiently alien from bankruptcy administration that, even when jurisdiction existed, it might not have been exercised by the bankruptcy judge, who might either have abstained or otherwise permitted other courts to exercise concurrent jurisdiction.